Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000 | F: (213) 430-6407

[Additional Counsel listed in Signature Page]

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TYSON, LENKA JOHN, and NOEL HARNER, individuals; SOCAL TRASH ARMY, an unincorporated association;<br><br>         Plaintiffs<br><br>vs.<br><br>CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,<br><br>         Defendant(s). | Case No.  5:23-cv-01539 TJH (KKx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declarations, Request for Judicial Notice and Proposed Order Filed concurrently]<br><br>**Judge:** Honorable Terry J. Hatter, Jr.<br>**Date:**  September 18, 2023<br>**Time:**  10:00 a.m.<br>**Ctrm:** 9C |

**TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 18, 2023 at 10:00 am PT, or as soon thereafter as the matter may be heard in Courtroom #9C of the above-titled Court, located at 350 W. 1st Street, 9th Floor Courtroom, Los Angeles, California, 90012, Plaintiffs James Tyson, Lenka John, Noel Harner, and SoCal Trash Army will and hereby do, pursuant to Federal Rule of Civil Procedure (F.R.C.P.) 65(a), move for a preliminary injunction order enjoining the City of San Bernardino ("City") from all operations involving the removal of unhoused people and their property from parks and other publicly accessible locations throughout the City until a lawful plan is put in place to address the unlawful practices, policies, procedures, and methods alleged in the Complaint and described in the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declarations submitted in support thereof. Such plan shall require compliance with the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehab Act"), and the U.S. and California Constitutions' prohibitions against unreasonable seizure and due process protections, including through:

- Cessation of the summary seizure and destruction of personal property of unhoused individuals, including unattended personal property, and ensuring compliance on the part of all City agents;

- Provision of adequate pre-seizure and post-seizure notices; adoption of lawful storage and documentation policies and practices to ensure all items seized by the City and its agents are properly tagged and stored for post-seizure retrieval;

- Establishment of a meaningful reasonable accommodation process that provides for the investigation of and response to reasonable accommodation

requests about any of the City's programs or activities involving park closures, encampment clearing operations, or related property seizure, disposal, or destruction; the provision of reasonable accommodations to unhoused persons with disabilities, including Plaintiffs, relating to such programs and activities; the review and modification of such programs and activities pursuant to the City's obligations under 28 CFR § 35.105; and the adequate training of all City staff and agents who may interact with unhoused individuals with disabilities regarding compliance with disability laws.

Plaintiffs' Motion for Preliminary Injunction ("Motion") is brought pursuant to F.R.C.P. 65(a), on the grounds that Plaintiffs are likely to succeed on their claims that the City's practices, policies, procedures, and methods violate the ADA, the Rehab Act, and the U.S. and California Constitutions' prohibitions against unreasonable seizure and due process protections; that if the City is not enjoined from engaging in operations involving the removal of unhoused people and their property from locations throughout the City during the pendency of this litigation, Plaintiffs will continue to be irreparably harmed; and that a preliminary injunction is equitable and in the public interest.

Plaintiffs' Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations in Support of the Preliminary Injunction, the Request for Judicial Notice, upon all the pleadings and papers on file in this action, and upon all oral and documentary evidence that may be presented at the time of the hearing on this Motion.

Dated: August 9, 2023          Respectfully submitted,
                               O'MELVENY & MYERS, LLP

                               */s/ Brittany Rogers*

                               Brittany Rogers (SBN 274432)
                               brogers@omm.com
                               Nancy Lynn Schroeder (SBN 280207)
                               nschroeder@omm.com
                               O'MELVENY & MYERS LLP
                               400 South Hope Street, 18th Floor
                               Los Angeles, CA 90071
                               P: (213) 430-6000 | F: (213) 430-6407

                               Cameron Westin (SBN 290999)
                               cwestin@omm.com
                               Bo Moon (SBN 268481)
                               bmoon@omm.com
                               O'MELVENY AND MYERS, LLP
                               610 Newport Center Drive, 17th Floor
                               Newport Beach, California 92660
                               P: (949) 823-6900 | F: (949) 823-6994

                               Catherine Rogers (SBN 315607)
                               krogers@aclusocal.org
                               Adrienna Wong (SBN 282026)
                               awong@aclusocal.org
                               ACLU FOUNDATION OF
                               SOUTHERN CALIFORNIA
                               1313 West 8th St.
                               Los Angeles, California 90017
                               P: (213) 977-5232 | F: (213) 417-2232

                               Brooke Weitzman (SBN 301037)
                               bweitzman@eldrcenter.org
                               Allison Greenberg (SBN 347106)
                               agreenberg@eldrcenter.org
                               ELDER LAW AND DISABILITY RIGHTS
                               CENTER
                               1535 17th St #110
                               Santa Ana, CA 92705
                               P: (714) 617-5353

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ......................................................................2

III.    ARGUMENT...........................................................................................4

        A.      Plaintiffs Are Likely To Succeed On The Merits Of Their Claims........5

                1.      Plaintiffs Are Likely To Succeed On Their Claim That The
                        City Violates The Right To Be Free From Unreasonable
                        Seizure...................................................................................5

                2.      Plaintiffs Are Likely To Succeed On Their Due Process
                        Claim.....................................................................................7

                3.      Plaintiffs Are Likely To Succeed On Their Claims Under
                        The Americans With Disabilities Act And Rehabilitation
                        Act.........................................................................................9

                4.      Plaintiffs Are Likely To Succeed On Their Claim Of
                        Failure To Accommodate In Violation Of The ADA.................12

        B.      Plaintiffs Face Irreparable Harm In The Absence Of A
                Preliminary Injunction...............................................................14

                1.      The City's Unconstitutional Practice Of Summarily Seizing
                        And Destroying Property Threatens Irreparable Harm To
                        Plaintiffs...............................................................................14

                2.      The City's Continuing Violation Of The ADA And The
                        Rehabilitation Act Threatens Irreparable Harm To
                        Plaintiffs. ............................................................................16

        C.      The Balance Of Hardships Tips Sharply In Favor Of Plaintiffs............18

        D.      The Public Interest Favors A Preliminary Injunction ............................20

IV.     THE BOND REQUIREMENT SHOULD BE WAIVED...............................22

V.      CONCLUSION.......................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ......................................................................5

*Allen v. Cnty. of Lake*,
71 F. Supp. 3d 1044 (N.D. Cal. 2014) .......................................................19

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ...................................................................20

*Barahona-Gomez v. Reno*,
167 F.3d 1228 (9th Cir. 1999) ...................................................................22

*Barden v. City of Sacramento*,
292 F.3d 1073 (9th Cir. 2002) .....................................................................9

*Barrilleaux v. Mendocino Cnty.*,
61 F. Supp. 3d 906 (N.D. Cal. 2014) .........................................................11

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) ...................................................................16

*Chalk v. U.S. Dist. Ct. Cent. Dist. of California*,
840 F.2d 701 (9th Cir. 1988) .....................................................................16

*Clement v. City of Glendale*,
518 F.3d 1090 (9th Cir. 2008) .....................................................................8

*Cooley v. City of Los Angeles*,
2019 WL 3766554 (C.D. Cal. Aug. 5, 2019) .............................................11

*Crowder v. Kitagawa*,
81 F.3d 1480 (9th Cir. 1996) .....................................................................12

*Cupolo v. Bay Area Rapid Transit*,
5 F. Supp. 2d 1078 (N.D. Cal. 1997) .........................................................16

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) .....................................................................14

*Elrod v. Burns*,
427 U.S. 347 (1976) ...................................................................................14

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ...................................................................21

*Garcia v. City of Los Angeles,*
    11 F.4th 1113 (9th Cir. 2021) ............................................................6, 7, 19

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,*
    725 F.3d 1088 (9th Cir. 2013) .......................................................................9

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) .....................................................................22

*Ky. Dep't of Corr. v. Thompson,*
    490 U.S. 454 (1989) .......................................................................................7

*Langley v. City of San Luis Obispo,*
    No. CV 21-07479-CJC (ADSx), 2022 WL 18585987 (C.D. Cal. Feb. 7, 2022) .....12

*Lavan v. City of Los Angeles,*
    693 F.3d 1022 (9th Cir. 2012) ............................................................6, 7, 8, 19

*Lavan v. City of Los Angeles,*
    797 F. Supp. 2d 1005 (C.D. Cal. 2011), *aff'd* 693 F.3d 1022 (9th Cir. 2012) ...16, 19

*League of Wilderness Defens./Blue Mountains Biodiversity Project v. Connaughton,*
    752 F.3d 755 (9th Cir. 2014) ............................................................19, 22

*Lopez v. Heckler,*
    713 F.2d 1432 (9th Cir. 1983) .....................................................................20

*Martin v. PGA Tour, Inc.*
    204 F.3d 994 (9th Cir. 2000) .......................................................................13

*McGary v. City of Portland,*
    386 F.3d 1259 (9th Cir. 2004) ............................................................9, 10, 11, 12

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) .......................................................................14

*Monterey Mech Co. v. Wilson,*
    125 F.3d 702 (9th Cir. 1997) .......................................................................14

*Nelson v. Nat'l Aeronautics and Space Admin.,*
    530 F.3d 865 (9th Cir. 2008), *rev'd on other grounds and remanded*, 562 U.S. 134 (2011) ............................................................................................14

*Payan v. Los Angeles Cmty. Coll. Dist.,*
    11 F.4th 729 (9th Cir. 2021) .........................................................................9

*Recycle for Change v. City of Oakland,*
    856 F.3d 666 (9th Cir. 2017) .........................................................................4

*Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*,
  731 F. Supp. 947 (E.D. Cal. 1990) ................................................................20

*Tamara v. El Camino Hosp.*,
  964 F. Supp. 2d 1077 (N.D. Cal. 2013) .........................................................20, 21

*United States v. Hawkins*,
  249 F.3d 867 (9th Cir. 2001) ................................................................................6

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ..............................................................................................6

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ................................................................................................8

*United States v. Juv. Male*,
  670 F.3d 999 (9th Cir. 2012) ................................................................................7

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ........................................................................14, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...........................................................................................4, 5, 16

**Statutes**

28 C.F.R. § 35.104 ...................................................................................................10

28 C.F.R. § 35.130(b)(1) .........................................................................................11

28 C.F.R. § 35.130(b)(1)(iii) ...................................................................................10

28 C.F.R. § 35.130(b)(3) .........................................................................................10

28 C.F.R. § 35.130(b)(3)(i) ......................................................................................10

28 C.F.R. § 35.130(b)(7) .........................................................................................12

28 C.F.R. § 35.150(a)(3) ..........................................................................................12

28 C.F.R. § 35.164 ...................................................................................................12

28 C.F.R. § 35.136 ...................................................................................................13

42 U.S.C. § 12131 ...................................................................................................10

42 U.S.C. § 12101 ...................................................................................................21

42 U.S.C. § 12132 .....................................................................................................9

**Other Authorities**

*Health Impact of Street Sweeps from the Perspective of Healthcare Providers*, J. Gen.
  Intern. Med. 37 (2022) ..........................................................................................23

*Title II Technical Assistance Manual*, Department of Justice Civil Rights Division, II
5.2000 .................................................................................................................13

## <u>CONCURRENTLY FILED DECLARATIONS</u>

1.  Declaration of James Tyson dated August 8, 2023 ("Tyson Decl.")

2.  Declaration of Lenka Elaine John dated June 23, 2023 ("John Decl.")

3.  Declaration of Noel Harner dated May 23, 2023 ("Harner Decl.")

4.  Declaration of Kristen Malaby dated August 8, 2023 ("Malaby Decl.")

5.  Declaration of Linda Crume dated June 23, 2023 ("Crume Decl.")

6.  Declaration of Moniko Simmons dated July 7, 2023 ("Simmons Decl.")

7.  Declaration of Anthony Davis dated July 7, 2023 ("Davis Decl.")

8.  Declaration of Damian Castanon dated August 15, 2022 ("Castanon Decl.")

9.  Declaration of Anthony Campbell dated August 8, 2022 ("Campbell Decl.")

10. Declaration of Helen Giacona dated August 8, 2022 ("Giacona Decl.")

11. Declaration of Jesse Sinohui dated August 8, 2022 ("Sinohui Decl.")

12. Declaration of Terry Rodriguez dated August 15, 2022 ("Rodriguez Decl.")

13. Declaration of Brian Butts dated July 7, 2023 ("Butts Decl.")

14. Declaration of DeShawn Grant dated June 13, 2023 ("Grant Decl.")

15. Declaration of Lela Bravo dated May 25, 2023 ("Bravo Decl.")

16. Declaration of Tina Cook dated June 16, 2023 ("Cook Decl.")

17. Declaration of Jody L. Isenberg dated August 8, 2023 ("Isenberg Decl.")

18. Declaration of Peggy Sue Prieto dated May 23, 2023 ("Prieto Decl.")

19. Declaration of Rosemary Timmons dated August 8, 2023 ("Timmons Decl.")

20. Declaration of Joseph Giacona dated August 15, 2022 ("J.Giacona Decl.")

21. Declaration of Melissa Otto dated August 8, 2022 ("Otto Decl.")

22. Declaration of Catherine Rogers In Support of Plaintiffs' Notice of Motion and Motion for Preliminary Injunction dated August 9, 2023 ("Rogers Decl.")

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The City of San Bernardino ("the City") is systematically violating the civil rights of its most vulnerable residents: unhoused individuals with disabilities. The City engages in a widespread, inhumane, and unconstitutional practice of summarily destroying such individuals' personal property—including their necessary medical supplies and mobility aids. The City forces disabled, unhoused individuals to comply with impossible orders to hastily relocate themselves and all their belongings—often to inaccessible and unsafe ravines and roadsides—or else face City security forces and the confiscation and destruction of their property.

The City's flagrant disregard for its own residents' disabilities violates the Americans with Disabilities Act and the Rehabilitation Act of 1973 ("ADA"). Its indiscriminate destruction of their personal property further tramples their constitutional rights against unreasonable seizures without due process. Individual Plaintiffs James Tyson, Lenka John, and Noel Harner (collectively, "Individual Plaintiffs") are currently homeless, and therefore are likely to be subjected again to the City's ongoing, unlawful practices. These same City practices also continue to harm Organizational Plaintiff SoCal Trash Army ("STA"), a mutual aid organization operating in San Bernardino, by diverting its resources and frustrating its mission.

The City makes no secret of its intent to continue its unlawful actions—and recently announced plans to take these same actions at another mass forced removal of unhoused people and their belongings in early September of this year. Accordingly, Plaintiffs seek a preliminary injunction to prevent irreparable harm to Plaintiffs and to preserve the status quo until the Court enters a judgment on the merits of this case.

## II.     STATEMENT OF FACTS

The City has a longstanding and widespread practice of summarily seizing and destroying the property of unhoused residents. *See* Crume Decl. ¶¶4-6; Simmons Decl. ¶8; Davis Decl. ¶9; Castanon Decl. ¶22; Campbell Decl. ¶3; Giacona Decl. ¶3-4; J.Giacona Decl. ¶¶4-8; Sinohui Decl. ¶4; Rodriguez Decl. ¶3; Tyson Decl. ¶16; Otto Decl. ¶¶4-5 (each describing repeated instances of the City destroying their property). In early June 2023, a City "'clean up' crew" seized and destroyed Plaintiff James Tyson's personal property—including his clothes, hygiene supplies, food, money, and other essentials. Tyson Decl. ¶¶9-11. On May 18, 2023, the City destroyed Plaintiff Lenka John's walker, her first aid kit with blood pressure cuff and heart monitor, her cart, her weather-proof tarp, and a folder containing medical records and her application for disability benefits. John Decl. ¶¶15-16. Ms. John pleaded with the City's crew to not dispose of her medical records into a trash compactor, but the Crew told her that nothing could be done. John Decl. ¶18. The City has similarly destroyed many other people's belongings—including identifying documents, personal mementos, tents, personal documents, medication, food, shoes, and blankets. Butts Decl. ¶10; Grant Decl. ¶12; Davis Decl. ¶7; Simmons Decl. ¶5; Crume Decl. ¶8. According to a report by the Deputy Director of Operations and Maintenance from a City Council meeting on June 30, 2023, the City has coordinated and carried out thousands of these programs at encampments across the City since September of 2022. RJN ¶¶2-3; Ex. 1.[1]

---

[1] Citations to "RJN ¶¶##" refer to paragraphs of Plaintiff's Request for Judicial Notice In Support Of Motion For Preliminary Injunction, filed concurrently herewith. Citations to "Ex. ##" refer to exhibits to the Declaration of Catherine Rogers In Support of Plaintiffs' Notice of Motion and Motion for Preliminary Injunction, filed concurrently herewith.

In May 2023, the City began closing down city parks, including Perris Hill and Meadowbrook Park, where Individual Plaintiffs and other unhoused individuals lived, and ordered these individuals to remove themselves and all their belongings. *See* Harner Decl. ¶¶5-6; Tyson Decl. ¶4; John Decl. ¶4. These orders were difficult or impossible for people with disabilities. *See* Tyson Decl. ¶5; John Decl. ¶5. Mr. Tyson, Ms. John, and Mr. Harner each requested disability accommodations from the City, including assistance packing their belongings and relocating to a safe and accessible alternative location. *See* Tyson Decl. ¶6; Harner Decl. ¶7-9; John Decl. ¶7. The City failed to grant their requested accommodations. Indeed, the City *failed to respond at all* to Mr. Tyson and Ms. John's requests. *See* Tyson Decl. ¶8-15; John Decl. ¶10. The City has similarly failed to respond *at all* to requests for disability accommodations from multiple other unhoused individuals with disabilities. *See* Butts Decl. ¶5; Bravo Decl. ¶¶8-13; Cook Decl. ¶¶13-17; Grant Decl. ¶¶8-13.

Due to the City's unconstitutional practices and continuing failure to accommodate their disabilities, Individual Plaintiffs have experienced significant physical, emotional, and dignitary injuries caused by the stress of their attempts to move themselves and their belongings on the timeline demanded by the City. Tyson Decl. ¶¶8-15; John Decl. ¶¶20-21; Harner Decl. ¶18-23. After the City failed to accommodate Mr. Tyson's and Mr. Harner's requests for disability accommodations, neither had anywhere to go and moved into adjacent areas which are inaccessible for their wheelchairs due to steep and rocky terrain. Tyson Decl. ¶¶10-13; Harner Decl. ¶¶15-19. Mr. Tyson sometimes goes hungry or thirsty because it is difficult for him to hoist himself up the steep slope of his location to get to food distributions. Tyson Decl. ¶13. He has also fallen on the slope multiple times, exacerbating his leg pain. Tyson Decl. ¶12. Mr. Harner resides on the side of a busy unsafe road with no pedestrian

walkway or sidewalk. Harner Decl. ¶18. Unless aided by a friend, he is forced to crawl in the dirt, pulling his wheelchair behind him, to reach his tent. Harner Decl. ¶19.

The City's unlawful encampment removal programs, activities, and practices are ongoing. To this day, the City maintains a multi-agency team dedicated to removing property from encampments and even a contract specifically for "remov[al] and dispos[al] of materials from homeless or transient encampments," including "bedding and personal effects." RJN ¶¶10-11, Ex. 2 at 47-48. The City has expressly announced plans to conduct more park closures using the same methods that previously harmed Plaintiffs—including as soon as early September of this year. RJN ¶¶6-9. At the June 7, 2023 City Council Meeting, the City's Public Information Officer announced, "Up next is Wildwood Park and Encanto Park, so ***what we have done to Perris Hill and done to Meadowbrook will be happening at Encanto and Wildwood within the coming months***." RJN ¶¶5, 7.

Individual Plaintiffs are homeless and therefore threatened by future property seizures and encampment removals. Tyson Decl. ¶2; John Decl. ¶2; and Harner Decl. ¶3. STA continues to divert its resources and experience frustration of its mission due to the City's unlawful actions. Malaby Decl. ¶11. As such, all Plaintiffs are at risk of imminent and irreparable harm.

## III.  ARGUMENT

Plaintiffs seeking a preliminary injunction must establish that they are likely to succeed on the merits; they are likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in their favor; and that an injunction is in the public interest. *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20  (2008)) (internal citations omitted). The court "consider[s] these factors on a sliding scale, such

'that a stronger showing of one element may offset a weaker showing of another.'" *Id*. (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Here, all four *Winter* factors favor granting preliminary injunctive relief.

### A.   Plaintiffs Are Likely To Succeed On The Merits Of Their Claims

Plaintiffs need not establish the City's constitutional and statutory violations to prevail under this factor, but must merely show they are *likely to succeed* on the merits of their claims against the City. *Winter*, 555 U.S. at 20.[2] Binding Ninth Circuit precedent demonstrates that Plaintiffs are likely to succeed in showing that the City's actions here violate the ADA, the Rehabilitation Act of 1973, and the Federal and State Constitutions.

### 1.   Plaintiffs Are Likely To Succeed On Their Claim That The City Violates The Right To Be Free From Unreasonable Seizure

The City's confiscation and summary destruction of unhoused persons' personal property violates the right against unreasonable seizures protected by the Fourth Amendment of the U.S. Constitution, as applied to the states by the Fourteenth Amendment; Article 1, Section 13 of the California Constitution; and 42 U.S.C. § 1983.

The City's confiscation and destruction of unhoused person's personal property—such as Mr. Tyson and Ms. John's clothes, hygiene supplies, medical records, and walker—constitute a "seizure" that invokes the reasonableness requirement of the Fourth Amendment. "A seizure results if 'there is some meaningful interference with an individual's possessory interests in that property,'" including

_____

[2] While all four *Winter* factors favor relief here, under the Ninth Circuit's "sliding scale" approach, a preliminary injunction can still be issued where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff .... [and] the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Cottrell*, 632 F.3d at 1135.

"seizing and destroying [unhoused plaintiffs'] unabandoned legal papers, shelters, and personal effects." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027, 1030 (9th Cir. 2012) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "The destruction of property has long been recognized as a seizure." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021). This is true even when the seized property is stored in public areas. *Id.*.

In *Lavan*, the Ninth Circuit upheld a preliminary injunction prohibiting Los Angeles from summarily destroying unhoused individuals' publicly stored personal property. 693 F.3d at 1027. The Ninth Circuit reaffirmed *Lavan's* reasoning in *Garcia*, upholding a preliminary injunction on the ground that Plaintiffs were likely to succeed in showing the Bureau of Sanitation working in conjunction with police violated the Fourth Amendment rights of unhoused persons by enforcing an ordinance allowing the destruction of "publicly stored personal property when it is a 'Bulky Item' that is not designed to be used as a shelter." 11 F.4th at 1117, 1119.

Here, because there is no suggestion that the City obtained warrants, the seizure is "***per se* unreasonable**" under Ninth Circuit precedent, and the City bears the burden of proving otherwise. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (emphasis added). Moreover, even if it were necessary to "balance the nature and quality of the intrusion . . . against the importance of the governmental interests," *Jacobsen*, 466 U.S. at 125, the Ninth Circuit has repeatedly held that summarily confiscating and destroying personal property of unhoused persons constitutes an unreasonable seizure. In *Lavan*, for example, the Court noted that Los Angeles did not, and "almost certainly could not . . . argue that its summary destruction of Appellees' family photographs, identification papers, portable electronics, and other property was reasonable under the Fourth Amendment." 693 F.3d at 1031. In *Garcia*, where there

was "no meaningful distinction between the destruction of property enjoined in *Lavan*" and the destruction of bulkier items subject to the challenged ordinance, the city did not even contend that the destruction was reasonable. 11 F.4th at 1119, 1121.

Here, the City summarily seized and destroyed the personal belongings of Mr. Tyson, Ms. John, and numerous other unhoused individuals. There were no warrants or exceptions that could render these seizures reasonable, and no opportunity for the individuals to reclaim their destroyed property—rendering the loss ***permanent*** in nature. Thus, well-established precedent shows Plaintiffs are very likely to succeed on the merits challenging the City's actions as unreasonable seizures under the Fourth Amendment and Section 13 of the California Constitution.

### 2. Plaintiffs Are Likely To Succeed On Their Due Process Claim

The City's summary seizure and destruction of unhoused persons' personal property also violates their rights to procedural due process protected by the Fourteenth Amendment of the U.S. Constitution; Article 1, Section 7 of the California Constitution; and 42 U.S.C. § 1983. Courts analyze procedural due process claims in two steps: first asking "whether there exists a liberty or property interest which has been interfered with by the State"; and second examining "whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. Juv. Male*, 670 F.3d 999, 1013 (9th Cir. 2012) (*quoting Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

As discussed above, the City "interfered with"—destroyed, actually—Plaintiffs' property interests, as well as the interests of numerous similarly situated unhoused individuals. *See, e.g., Lavan*, 693 F.3d at 1030. Here, as in *Lavan*, the property interest at issue is "the most basic of property interests encompassed by the due process clause:

[Plaintiffs'] interest in the continued ownership of their personal possessions." *Id.* at 1031.

Because Plaintiffs' possessions were "property" within the meaning of the Fourteenth Amendment, "the City must comport with the requirements of the Fourteenth Amendment's due process clause if it wishes to take and destroy them." *Id.* at 1032. The "general rule" for such requirements (absent exceptions not applicable here) is that "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). In other words, the City "must announce its intentions and give the property owner a chance to argue against the taking." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).

The City provided no such opportunity to Plaintiffs, nor to the numerous other unhoused individuals whose property was destroyed. Pursuant to the City's widespread and longstanding practice, a City-contracted crew summarily discarded Mr. Tyson's and Ms. John's personal belongings into a trash truck, ignoring pleas from Ms. John and Mr. Tyson's friend to stop so they could preserve the property from destruction. Tyson Decl. ¶11; John Decl. ¶16; Butts Decl. ¶13. The City did not give the Plaintiffs or other unhoused individuals any meaningful chance to argue against the taking of their property, any post-seizure notice, or any opportunity to petition for their property's return. Accordingly, Plaintiffs are likely to succeed on the merits of their claim that the City's destruction of unhoused persons' personal property violates procedural due process. *Lavan*, 693 F.3d at 1032-33 (affirming prior ruling that plaintiffs were likely to succeed on due process claim challenging city's "practice of on-the-spot destruction of seized property" without adequate notice); *see also Garcia*

*v. City of Los Angeles*, 481 F. Supp. 3d 1031, 1047 (C.D. Cal. 2020), *aff'd*, 11 F.4th 1113 (9th Cir. 2021).

### 3. Plaintiffs Are Likely To Succeed On Their Claims Under The Americans With Disabilities Act And Rehabilitation Act

Plaintiffs are likely to succeed on their claims of disability discrimination under Sections 12132 and 12133 of the Americans with Disabilities Act.[3] Title II of the ADA requires that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A claim of disability discrimination under Title II is met when: (1) the plaintiff "is an individual with a disability"; (2) the plaintiff "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities"; (3) the plaintiff "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity"; and (4) that "exclusion, denial of benefits, or discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). The "programs, services, or activities" in Section II of the ADA have been broadly construed to include "anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

---

[3] For the reasons stated here, Plaintiffs are also likely to succeed on their claims under Section 504 of the Rehabilitation Act, which the Ninth Circuit evaluates "coextensively because 'there is no significant difference in the analysis of rights and obligations created by the two Acts.'" *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (quoting *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098 (9th Cir. 2013)). The Court may take judicial notice of the fact that the City receives federal funding for purposes of assessing Plaintiffs' Rehabilitation Act claim. RJN ¶¶12-15; Ex. 3.

Moreover, the ADA, as construed by its implementing regulations, prohibits the City from providing aids, benefits, or services in a way that does not afford qualified individuals with a disability an "equal opportunity to obtain the same result . . . as that provided to others," or otherwise limiting individuals with disabilities in the enjoyment of any "advantage or opportunity enjoyed by others." 28 C.F.R. § 35.130(b)(1)(iii). These regulations also prohibit the City from utilizing "methods of administration" that "have the effect of subjecting . . . individuals with disabilities to discrimination on the basis of disability" or "defeat or substantially impair accomplishment" of the program's objectives as to individuals with disabilities. 28 C.F.R. § 35.130(b)(3).

All the elements of Title II disability discrimination are clearly met here. Individual Plaintiffs are qualified individuals with disabilities, each relying on a wheelchair. Tyson Decl. ¶3; John Decl. ¶3; Harner Decl. ¶2. STA assists qualified individuals with disabilities. Malaby Decl. ¶¶8-10. The City is a public entity within the meaning of the ADA. 42 U.S.C. § 12131; 28 C.F.R. § 35.104. Like all City residents, Plaintiffs are "qualified" to receive the benefits of the City's public "programs, activities, and services." *See McGary*, 386 F.3d at 1269-70.

The City's administration of park closure and encampment-clearing operations are "programs, service, or activities" covered by the ADA. *See id.* at 1268-69. The City's "methods of administration" for these programs and activities—demands that unhoused people move themselves and all their belongings with limited notice and time, and on-the-spot destruction of property that is not moved—have the unlawful effect of subjecting individuals who have disabilities that impede them from complying with the City's orders to discrimination. 28 C.F.R. § 35.130(b)(3)(i). The City's directives to relocate are impracticable for people with disabilities like Individual Plaintiffs, for whom moving themselves and their belongings out of wheelchair-

accessible areas is far more difficult than for people without such disabilities. Tyson Decl. ¶5; John Decl. ¶5; Harner Decl. ¶13. When disabled people, due to their disabilities, are unable to move their belongings on the City's timeline, the City imposes an additional burden on them: the permanent deprivation of their belongings.

Thus, the City denies people with disabilities like Individual Plaintiffs "equal opportunity" to comply with its orders and preserve their property from destruction. 28 C.F.R. § 35.130(b)(1). In other words, the City denies Individual Plaintiffs and similarly situated individuals with disabilities a covered benefit under the ADA: the "benefit" of the opportunity to comply with the City's directives in a manner consistent with their disabilities. *See McGary* 386 F.3d at 1264-1265 (City's failure to grant reasonable accommodations for disabled plaintiff "to comply with the nuisance abatement program" adequately alleged discriminatory denial of "benefit" "by reason of" plaintiff's disability); *Cooley v. City of Los Angeles*, No. 2:18-cv—09053-CAS-PLA, 2019 WL 3766554, at *5 (C.D. Cal. Aug. 5, 2019) (plaintiff's allegation that City "failed to reasonably accommodate her disability by not allowing her an opportunity to comply with the City's requirements during the area cleaning in a manner consistent with her disabilities" adequately stated claim under ADA).

The City also violates the ADA by carrying out its park closure and encampment-clearing programs and activities in ways that "unduly burden disabled persons." *McGary*, 386 F.3d at 1265; *see also Barrilleaux v. Mendocino Cnty.*, 61 F. Supp. 3d 906, 916 (N.D. Cal. 2014) ("undue burden" test satisfies the third prong of Title II claim). The City places a significantly greater burden on Individual Plaintiffs than it does on people without mobility disabilities, who are more able to relocate themselves and physically carry their belongings without assistance. *See Cooley* at *5 (allegations that plaintiff requested help carrying her property because of her disability

and lost most of that property because her needs were not accommodated were sufficient to establish claim that City "violat[ed] the ADA by unduly burdening people with disabilities"). *See also Langley v. City of San Luis Obispo*, No. CV 21-07479-CJC (ADSx), 2022 WL 18585987, at *6 (C.D. Cal. Feb. 7, 2022).

For all these reasons, and based on the legal authority cited above, Plaintiffs are likely to prevail on their ADA discrimination claims.

### 4.     Plaintiffs Are Likely To Succeed On Their Claim Of Failure To Accommodate In Violation Of The ADA

Plaintiffs are likely to succeed on their claim that the City failed to accommodate their disabilities in violation of the ADA. The ADA requires that public entities "make reasonable modifications in policies, practices, or procedures . . . unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). A public entity has a duty to consider ***all resources available*** for use in the funding and operation of a service, program, or activity when determining whether a requested accommodation can be offered. 28 C.F.R. § 35.150(a)(3). If a public entity determines that a particular accommodation cannot be provided, it must provide a written statement of the reasons for reaching that conclusion. *Id*. A public entity that fails to provide a reasonable disability accommodation or modification, particularly after one has been requested, commits a stand-alone violation of Title II of the ADA. 28 C.F.R. § 35.150(b)(7)(i).

Here, Plaintiffs are likely to succeed on their claim for failure to accommodate under the ADA because Individual Plaintiffs' requested disability accommodations were reasonable and should have been granted. For example, Ninth Circuit authority clearly supports the reasonableness of their requests for "additional time to relocate." *See, e.g., McGary*, 386 F.3d 1259 (City violated ADA by failing to grant Plaintiff's

requested accommodation of additional time to clean his yard to comply with the City's nuisance ordinance). Federal guidance makes clear that Plaintiffs' requests for assistance with packing and transporting personal property, medically-appropriate transportation to an alternate location, and relocation to a wheelchair-accessible location are also reasonable accommodations. *See Title II Technical Assistance Manual*, Department of Justice Civil Rights Division, II 5.2000 (listing "assignment of aides to beneficiaries, and provision of services at alternate accessible sites" as reasonable non-structural accommodations); *see also Martin v. PGA Tour, Inc*. 204 F.3d 994, 1000 (9th Cir. 2000) (golf cart provided to disabled golfer allowed "access to a type of competition in which he otherwise could not engage because of his disability," which "is precisely the purpose of the ADA").

Moreover, the City **could have** assisted Plaintiffs with the transportation and storage of their belongings or placement in a non-congregate alternative setting without needing to create new services. *See* Grant Decl. ¶12 (existing services and personnel for property transport); Harner Decl. ¶12 (existing non-congregate housing placement program). Ms. John's request to be relocated to a place where she could remain with her service animal is also reasonable and supported by ADA regulations. *See* 28 C.F.R. § 35.136 (generally, public entities must permit the use of a service animal by people with disabilities).

Further, Plaintiffs are also likely to succeed on their claim because the City **failed to even respond** to requests for accommodations. The City did not issue a written statement of denial, or meet its burden to show that Individual Plaintiffs' accommodation requests required a "fundamental alteration." Instead, it simply **ignored their requests**. This constitutes a stand-alone violation of Title II of the ADA. 28 C.F.R. § 35.150(b)(7)(i).

---

While there are many ways the City could have chosen to accommodate people's disabilities, it chose instead to ignore accommodation requests. Plaintiffs are therefore likely to succeed on their claim that the City violated the ADA by disregarding their requests for accommodations and failing to institute adequate policies for providing disability accommodations.

**B.   Plaintiffs Face Irreparable Harm In The Absence Of A Preliminary Injunction**

**1.   The City's Unconstitutional Practice Of Summarily Seizing And Destroying Property Threatens Irreparable Harm To Plaintiffs**

Absent the Court's intervention, Plaintiffs will likely suffer irreparable harm caused by the City's ongoing, widespread, and unconstitutional practice of summarily seizing and destroying unhoused people's personal property. The Ninth Circuit does "not require a strong showing of irreparable harm for constitutional injuries." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). But here, the showing of harm is compelling.

The "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). "An alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal citation omitted). That is because "[u]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Nelson v. Nat'l Aeronautics and Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds and remanded*, 562 U.S. 134 (2011).

The irreparable harm of the constitutional violations here "is compounded by the fact that the … violations result in … permanent deprivation" of essential belongings. *Garcia*, 481 F. Supp. 3d at 1048. The City's longstanding and ongoing practice is to seize and immediately destroy unhoused people's personal property by throwing it into compactor trucks. *See* Tyson Decl. ¶11; John Decl. ¶¶15-16; Butts Decl. ¶10; Grant Decl. ¶12; Davis Decl. ¶7; Simmons Decl. ¶5, 8; Crume Decl. ¶¶4-5, 8 (each describing **permanent** deprivation of property the City destroyed). Further, destruction of property that Plaintiffs need for their health, mobility, and protection from the extreme summer heat in San Bernardino[4] is likely to cause irreparable physical and dignitary injuries. *See* Complaint ¶¶9, 78; John Decl. ¶¶15-16 (describing destruction of walker, first aid kit with blood pressure cuff and heart monitor); Harner Decl. ¶21 (describing essential items he needs to keep with him for mobility and survival).

Individual Plaintiffs are likely to suffer such irreparable harm because they each remain homeless, and the City routinely subjects its homeless residents, including Individual Plaintiffs, to summary seizure and destruction of property. *See* Crume Decl. ¶4; Simmons Decl. ¶8; Davis Decl. ¶9; Castanon Decl. ¶22; Campbell Decl. ¶3; Giacona Decl. ¶3-4; Sinohui Decl. ¶4; Rodriguez Decl. ¶3; Tyson Decl. ¶16 (each describing repeated instances of City destroying their property); Isenberg Decl. ¶¶8-11. Recently, City officials specifically threatened Plaintiff Tyson with destruction of his property. Tyson Decl. ¶17. Plaintiffs Tyson and Harner currently live near areas the City designates "high frequency" areas for property removal operations. RJN ¶4. The City's unconstitutional practice is therefore "likely to be enforced imminently against

---

[4] The National Weather Service issued a heat advisory for the San Bernardino area until August 6, 2023, with local temperatures exceeding 100°F. Forecasted temperatures for the week of August 6, 2023 have and will continue to reach highs in the 90s. RJN ¶¶17-18, Exs. 5, 6.

[Plaintiffs], leading to the permanent destruction of their belongings." *Garcia*, 481 F. Supp. 3d at 1048-1049.

The City's ongoing practice also irreparably harms STA's mission and causes it to divert its resources to helping individuals replace seized and destroyed items. Malaby Decl. ¶¶6-7. Such harms to the organization are "intangible and not compensable" and thus "constitute[ ] irreparable harm." *Garcia*, 481 F. Supp. 3d at 1049 (citing *Valle del Sol*, 732 F.3d at 1029). The City has announced plans to continue conducting forced removals of unhoused people that entail the unconstitutional seizure and destruction of their property. RJN ¶¶4, 6-7, 9. In the absence of injunctive relief, STA will unquestionably suffer harm to its mission and diversion of resources caused by the City's imminent property seizure and destruction operations.

Given the frequency with which the City summarily seizes and destroys the property of homeless persons like Individual Plaintiffs, and the City's imminent plans for additional forced removal operations at its parks, Plaintiffs are "likely to suffer irreparable harm before a decision on the merits can be rendered." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22). Therefore, "the threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief." *Id.*

### 2. The City's Continuing Violation Of The ADA And The Rehabilitation Act Threatens Irreparable Harm To Plaintiffs.

Absent the Court's intervention, the City's systemic violations of the ADA and Rehabilitation Act will also irreparably harm Plaintiffs. The Ninth Circuit has held that psychological and physiological distress from disability discrimination and the resulting loss of opportunities constitute irreparable harm. *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 709-710 (9th Cir. 1988); *see also Cupolo v. Bay Area*

*Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) (injuries to individual dignity of persons with mobility disabilities and interference with ADA's policy of assuring equal opportunity constitute irreparable injury). The City's ongoing failure to provide reasonable disability accommodations—*or even respond to requests for them*—interferes with the fundamental structure and purpose of the ADA, and it will cause Plaintiffs irreparable harm.

The methods with which the City administers its park closure and encampment-clearing programs and activities—including demands to move that are uniquely burdensome or impossible for people with mobility disabilities—have injured Individual Plaintiffs' individual dignity and caused physical and emotional stress. Tyson Decl. ¶¶12-15; John Decl. ¶¶20-21; Harner Decl. ¶13, 19-23. The City's methods and failure to accommodate Mr. Tyson and Ms. John caused them to experience physical, emotional, and dignitary injuries stemming from the destruction of essential belongings like disability benefits paperwork and mobility aids. Tyson Decl. ¶¶8-12; John Decl. ¶¶16-20.

Individual Plaintiffs remain homeless and are therefore likely to suffer such injuries again if the City's park closure and encampment-clearing programs and activities are not enjoined. *See* Tyson Decl. ¶2; John Decl. ¶2; Harner Decl. ¶3. Further, the City's displacement of Mr. Tyson and Mr. Harner with no accessible alternative caused both Plaintiffs to relocate into wheelchair-inaccessible locations, forcing them to overcome difficult and dangerous physical obstacles and inflicting daily pain, stress, and dignitary harm. Harner Decl. ¶¶19-20. Tyson Decl. ¶¶12-15. They still live in these locations—without response from the City to their reasonable accommodation requests—and continue to suffer irreparable harm as a result.

STA faces continuous and ongoing diversion of its resources and frustration of its mission due to the City's failure to accommodate disabled, unhoused people as it carries out its park closure and encampment-clearing programs and activities. STA continues to help individuals with disabilities move themselves and their belongings to new locations because the City has failed to provide them disability accommodations. Malaby Decl. ¶10. The organization's volunteers have replaced medical supplies and walkers destroyed by the City after individuals, due to their disabilities, were unable to move their property in compliance with City orders. Malaby Decl. ¶7.

As detailed above, the City will continue to use the same methods at future park closures and encampment removal programs and activities. RJN ¶¶4, 6-7, 9-11, Ex. 2. This will result in continued discrimination against disabled, unhoused residents because the City has demonstrated it has **no process in place** to accept reasonable accommodation requests from such individuals, to respond effectively to those requests, to engage in an interactive process with requesters, or to provide accommodations that meet the needs of people with disabilities. In the absence of such a process, any future accommodation requests will go unanswered. For all of these reasons, all Plaintiffs are likely to continue suffering ongoing and irreparable harm.

## C.   The Balance Of Hardships Tips Sharply In Favor Of Plaintiffs

The balance of hardships strongly favors a preliminary injunction. As detailed above, the City's unlawful seizure and destruction of property and its wanton violations of disability rights have already harmed Plaintiffs and are very likely to continue to cause harm—including permanent loss of essential property, forced relocation into areas that are dangerous and inaccessible for their disabilities, and ongoing violations of their civil rights.

In contrast, a preliminary injunction will simply require Defendant to refrain from violating the law, and to cease its forced removal of unhoused people until it can come into compliance with the law. The City "can have no interest in the enforcement of a provision that is likely to be found unconstitutional," *Garcia*, 481 F. Supp. 3d at 1050-51, and the "protection of constitutional rights is a strong equitable argument in favor of issuing [a preliminary] injunction," *Allen v. Cnty. of Lake*, 71 F. Supp. 3d 1044, 1057 (N.D. Cal. 2014).

Plaintiffs do not challenge the City's authority to perform legal cleaning and maintenance activities in its parks, and multiple cases in the district set forth the legal requirements necessary for the City to comply with the law when conducting such activities. *See, e.g.*, *Garcia*, 11 F.4th at 1118; *Lavan,* 693 F.3d at 1022. Thus, the City clearly does not need to rely on its current unconstitutional and discriminatory practices to protect the public interest.

Moreover, Plaintiffs' permanent harm if relief is denied, contrasted with the City's more temporary harm if it is granted, tips the balance even further in Plaintiffs' favor. *League of Wilderness Defens./Blue Mountains Biodiversity Project v. Connaughton,* 752 F.3d 755, 765 (9th Cir. 2014). Plaintiffs remain homeless, and thus are at risk of experiencing the same permanent and irreparable ongoing hardships. Conversely, any harm to the City in being preliminarily restrained from carrying out its encampment and park clearing programs and activities pursuant to its current practices, methods, and protocol is temporary and will last only for the duration of the litigation, or until it brings its methods, policies, practices, and protocol for such programs into compliance with the law.

Weighing nearly identical equities, the district court in *Lavan* concluded that "[t]he City's interest in clean streets is outweighed by Plaintiffs' interest in maintaining

the few necessary personal belongings they might have." *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1019-20 (C.D. Cal. 2011), *aff'd* 693 F.3d 1022 (9th Cir. 2012). Similarly, the *Garcia* district court recognized that "the constitutional rights of homeless individuals outweigh the potential hurdles the injunction might pose to the City's efforts to keep the sidewalks clean." 481 F. Supp. 3d at 1050-51. The minor administrative hurdles the City may face in fulfilling its legal obligations under the ADA pale in comparison to the burdens faced by Plaintiffs and others whose disability rights and disability accommodation requests have been ignored, resulting in harms to their persons, property, and dignity. *See Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1087–88 (N.D. Cal. 2013) (harm to plaintiff's "overall independence, equality, and dignity" resulting from failure make an individualized assessment of her disability accommodation outweighed defendant's "administrative inconvenience" of doing so); *see also Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990) (injury to plaintiff's working relationship with her service dog and her "dignity and self-respect" outweighed the "minor inconvenience" of restructuring program to accommodate her).

### D.   The Public Interest Favors A Preliminary Injunction

"Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). Here, the issuance of a preliminary injunction serves the public interest, because it would allow Individual Plaintiffs to live in relative dignity and avoid serious and ongoing violations of their rights, while allowing STA to avoid diversion of its resources and fulfill its core mission of cleaning up the natural environment and providing food and aid to low-income people. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (holding that where there is

"a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction").

The public interest is served by effectuating the purpose of the ADA "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for [disabled] individuals." 42 U.S.C. § 12101. "In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011)*; see also Tamara*, 964 F. Supp. 2d at 1087-88 (in enforcing the ADA, "the public has a strong interest in promoting the equality of all persons").

The requested preliminary injunction also serves the public interest because it aligns with national best practices in addressing homelessness. The City's current practices fly in the face of guidance from the U.S. Interagency Council on Homelessness, which advises municipalities to "take special care to avoid" operations that destroy unhoused people's belongings when an encampment closes, and to provide "secure, accessible storage options [to] ensure that they do not lose personal items, including clothing and identification." RJN ¶¶16; Ex. 4. The Council notes that "fear of losing belongings" can impede people's connections to vital services and programs. *Id*.

Further, the requested preliminary injunction will improve public health and safety. The destruction of unhoused peoples' belongings leads to worse health outcomes, depriving them of the equipment necessary to live safely outdoors, increasing stress and re-traumatization, and worsening mental health outcomes by inflicting a sense of despair and reducing motivation for self-care. Ex. 8 (Qi, D., Abri,

K., Mukherjee, M.R. et al., *Health Impact of Street Sweeps from the Perspective of Healthcare Providers*, J. Gen. Intern. Med. 37, 3707–3714 (2022)) at 3712.

Importantly, the requested preliminary injunction will have a broader impact than just on the immediate Plaintiffs. The civil rights of other disabled, unhoused residents of the City are also imperiled by the City's ongoing unlawful programs. *See* Cook Decl. ¶¶6-18; Grant Decl. ¶¶8-14; Bravo Decl. ¶¶4-22; Butts Decl. ¶¶3-11; Prieto Decl. ¶¶18-19; Timmons Decl. ¶¶3-7. The requested preliminary injunction will protect these non-parties' rights that would otherwise be subjected to the City's unlawful actions. *See League of Wilderness Defens.*, 752 F.3d at 766. Courts consider the effects of unconstitutional practices which "would infringe not only the [civil rights] of [plaintiffs], but also the interests of other people" subjected to the same violations. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Enjoining the City from summarily seizing and destroying property and violating disability rights would stop these ongoing offenses against the public interest.

## IV.    THE BOND REQUIREMENT SHOULD BE WAIVED

Where, as here, there is no likelihood of harm to the party enjoined, the requirement to post a bond may be dispensed with entirely. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

## V.    CONCLUSION

For the foregoing reasons, and upon good cause shown, Plaintiffs request the Court enter a preliminary injunction enjoining the City of San Bernardino from operations involving the removal of unhoused people and their property from parks and other publicly accessible locations throughout the City until a lawful plan is put in place to address the violations of law alleged in the Complaint and described herein.

Dated: August 9, 2023

Respectfully submitted,
O'MELVENY & MYERS, LLP

*/s/ Brittany Rogers*

Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000 | F: (213) 430-6407

Cameron Westin (SBN 290999)
cwestin@omm.com
Bo Moon (SBN 268481)
bmoon@omm.com
O'MELVENY AND MYERS, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
P: (949) 823-6900 | F: (949) 823-6994

Catherine Rogers (SBN 315607)
krogers@aclusocal.org
Adrienna Wong (SBN 282026)
awong@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th St.
Los Angeles, California 90017
P: (213) 977-5232

Brooke Weitzman (SBN 301037)
bweitzman@eldrcenter.org
Allison Greenberg (SBN 347106)
agreenberg@eldrcenter.org
ELDER LAW AND DISABILITY RIGHTS
CENTER
1535 17th St #110
Santa Ana, CA 92705
P: (714) 617-5353

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs James Tyson, Lenka John, Noel Harner, and SoCal Trash Army, certifies that this brief contains 6,560 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 9, 2023            Respectfully submitted,
                                 O'MELVENY & MYERS, LLP

                                 */s/ Brittany Rogers*

                                 Brittany Rogers (SBN 274432)
                                 brogers@omm.com
                                 Nancy Lynn Schroeder (SBN 280207)
                                 nschroeder@omm.com
                                 O'MELVENY & MYERS LLP
                                 400 South Hope Street, 18th Floor
                                 Los Angeles, CA 90071
                                 P: (213) 430-6000 | F: (213) 430-6407

                                 Cameron Westin (SBN 290999)
                                 cwestin@omm.com
                                 Bo Moon (SBN 268481)
                                 bmoon@omm.com
                                 O'MELVENY AND MYERS, LLP
                                 610 Newport Center Drive, 17th Floor
                                 Newport Beach, California 92660
                                 P: (949) 823-6900 | F: (949) 823-6994

                                 Catherine Rogers (SBN 315607)
                                 krogers@aclusocal.org
                                 Adrienna Wong (SBN 282026)
                                 awong@aclusocal.org
                                 ACLU FOUNDATION OF
                                 SOUTHERN CALIFORNIA
                                 1313 West 8th St.
                                 Los Angeles, California 90017
                                 P: (213) 977-5232

                                 Brooke Weitzman (SBN 301037)
                                 bweitzman@eldrcenter.org
                                 Allison Greenberg (SBN 347106)
                                 agreenberg@eldrcenter.org

ELDER LAW AND DISABILITY RIGHTS
CENTER
1535 17th St #110
Santa Ana, CA 92705
P: (714) 617-5353