Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000

[Additional Counsel listed on Signature Pages]

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TYSON, LENKA JOHN, and NOEL HARNER, individuals; SOCAL TRASH ARMY, an unincorporated association;<br><br>Plaintiffs<br>vs.<br><br>CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,<br><br>Defendant(s). | Case No.  5:23-cv-01539 TJH (KKx)<br><br>**DECLARATION OF JAMES TYSON, DATED AUGUST 8, 2023** |

## Declaration of James Tyson

I, James Tyson, hereby declare:

1. I am over the age of eighteen, and I make this declaration based on my own personal knowledge, except for matters stated on information and belief, and if called to testify I could and would do so competently as follows.

2. I am an unhoused resident of the City of San Bernardino, and I stay in and around the area of Meadowbrook Park.

3. I have physical and mental impairments that substantially limit one or more major life activities. I have had two strokes, which resulted in long term impairments to my eyesight, memory, sense of balance, and ability to process information. In addition, I have difficulty walking and rely on a wheelchair.

4. On or about May 15, 2023, I was informed that I could no longer stay in Meadow Brook Park and that I would have to move all my personal property out of the park.

5. My disabilities made it very difficult and impracticable to comply with this order because of my mobility impairments.

6. I requested a Reasonable Accommodation ("RA") from the City of San Bernardino regarding the closure of Meadowbrook Park. This request included the following proposed accommodations: Additional time to relocate; Assistance with packing and transporting personal property; Medically appropriate transportation of myself to alternate location; Relocation to a wheelchair-accessible location; Placement in a non-congregate setting such as a motel; Storage for my personal property.

7. A true and correct copy of my Reasonable Accommodation request is attached as Exhibit 1. This request was delivered to the City by the ACLU of Southern California.

8. I never heard back from anyone at the City about my Reasonable Accommodation request.

1

9. I had to pack up and move my personal belongings by myself, with some help from friends.

10. Following the park closure, I relocated to the parking lot right next to the park. I did not know where else to go. That area is a shade-less strip with full exposure to the sun and elements.

11. While I was staying in the parking lot, on a date in early June, nearly all my personal property was thrown away by a "clean up" crew sent by the City. My property was located in the parking lot when they disposed of it. I lost my clothes, hygiene supplies, food, money, and other essential items.

12. Following this incident, I felt I was no longer safe in the parking lot, so I moved into a ravine right next to the parking lot. To get into this area, I need to throw my wheelchair down into the ravine. Then I slide down myself because I cannot walk down the steep slope. My wheelchair cannot roll over the rocky terrain in the ravine, so mobility is very difficult. Climbing in and out of the steep, rocky ravine is very difficult for me due to my limited mobility, and it exacerbates my pain and mobility disabilities. I have fallen multiple times when trying to enter or exit the ravine. This has significantly worsened the pain in my legs.

13. When organizations distribute food to the park, I try to hoist myself out of the ravine to make it before they are done. I need to ask a friend to carry my wheelchair out for me. On multiple occasions, I have missed the food distributions because I cannot get there in time. As a result, I am frequently hungry and thirsty. It is also hard to carry food and water down into the ravine, due to my mobility limitations.

14. I have not heard anything further from the City regarding the Reasonable Accommodation request or about my seized personal property.

15. The City's failure to accommodate my disabilities has made my life significantly more difficult and dangerous. It has also aggravated my anxiety and my medical conditions. I would like to go somewhere safe, but I have nowhere else

to go.

16. The incident in June is not the first time the City has seized and destroyed my property. Over a period of years, the City has destroyed my tents, clothing, and other personal property on multiple occasions. I estimate that the City has destroyed my property at least approximately five or six times in the past.

17. Compounding my recent stress, San Bernardino police officers showed up at the ravine where I am living on the morning of July 31, 2023. The police threatened the unhoused people living there, including myself, with arrest if we did not leave the area. One officer told us if we did not leave by the time they returned, our belongings would be destroyed, and we would be cited for trespassing.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 8th day of August, 2023, in San Bernardino, California.

*/s/ James Tyson*
JAMES TYSON