Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000

[Additional Counsel listed on Signature Pages]

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TYSON, LENKA JOHN, and NOEL HARNER, individuals; SOCAL TRASH ARMY, an unincorporated association;<br><br>Plaintiffs<br>vs.<br><br>CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,<br><br>Defendant(s). | Case No.  5:23-cv-01539 TJH (KKx)<br><br>**DECLARATION OF LENKA ELAINE JOHN, DATED JUNE 23, 2023** |

## Declaration of Lenka Elaine John

I, Lenka Elaine John, hereby declare:

1. I am over the age of eighteen, and I make this declaration based on my own personal knowledge, except for matters stated on information and belief, and if called to testify I could and would do so competently as follows.

2. I am an unhoused resident of the City of San Bernardino. Prior to May 18, 2023, I was residing in Meadowbrook Park.

3. I have a physical impairment that substantially limits one or more major life activity. I cannot walk more than a few steps unassisted, and I rely on a wheelchair or walker for mobility. I also have a service dog to assist me.

4. On or about May 15, 2023, I was informed that I could no longer stay in Meadowbrook Park and that I would have to move all my personal property out of the park.

5. My disabilities made it very difficult and impracticable to comply with this order. There was no way I could carry all my personal belongings by myself out of the park in my wheelchair while holding onto my service dog. Additionally, it is hard to maneuver my wheelchair while carrying my personal belongings and trying to find flat ground that allows my wheelchair to move.

6. On May 15, 2023, I requested a Reasonable Accommodation from the City of San Bernardino regarding the park closure.

7. I requested the following accommodations: Assistance with packing and transporting personal property; Medically appropriate transportation of myself to alternate location; Relocation to a wheelchair-accessible location; Permission to remain in place due to difficulty moving my items; Relocation to location which allows me to remain with my service animal.

8. A true and correct copy of my Reasonable Accommodation request is attached as Exhibit 1. This request was delivered to the City by the ACLU of

1

Southern California.

9. On May 15, 2023, I spoke with a city employee named Christian in Meadowbrook Park who had received a copy of my Reasonable Accommodation request. He said that he was looking into my request and would follow up with me.

10. I never heard from Christian again. The City did not provide the accommodations I requested. I never heard anything further from the City regarding my request.

11. On May 18, 2023, I was awoken early in the morning – approximately 5:00 a.m. – by a city employee named David, who informed me that I needed to vacate Meadowbrook Park by 7:00 a.m.

12. I showed David a copy of my Reasonable Accommodation request, which I had submitted to the City several days prior. He looked at it and said he would talk with someone else about it and come back.

13. David handed me a map of a field next to Nuñez Park, and he advised me that I could go there. A true and correct copy of the map is attached as Exhibit 2. I did not have any prior knowledge of this field next to Nuñez Park. It is more than 2.5 miles from where I was staying and would have required me to cross over the freeway to get there. He did not offer to provide transportation or any other resources. He also suggested that I could go to Community Action Partnership for resources. He never came back to discuss my Reasonable Accommodation request.

14. To comply with his orders to leave, I left the park at approximately 6:00 a.m. with all the belongings I could carry.

15. Due to my disability, I was only able to carry two backpacks and a small suitcase. As a result, I left behind much of my property. Since I could not carry everything on my wheelchair with my service dog, I was limited in the property I could take with me and was forced to leave many of my personal items behind.

16. Shortly after approximately 6:00 a.m., I observed a clean-up crew

2

begin disposing of property around the park. I watched as my belongings were loaded into a trash truck. This included the walker I rely on when I am not using my wheelchair; a first-aid kit with a blood pressure cuff and heart monitor; a large suitcase; a small cart I used to carry things; a tarp I used for protection from the elements; and a folder containing my medical records and other important paperwork related to my application for disability assistance.

17. I felt I had no choice but to leave my belongings behind because I had been ordered to leave and I could not physically carry all my belongings with me. The City did not respond to my request for assistance, so I had no choice but to leave my property behind.

18. When I saw one of the workers throw my folder with medical paperwork into the trash truck, I pleaded with him to retrieve it. They told me it could not be retrieved because it had gone into the compactor.

19. That same day, I went to the Community Action Partnership (CAP), as I had been instructed to do by David. However, I was told by a CAP employee that they could not accommodate my service animal, and they were unable to provide me with resources.

20. The City's failure to accommodate has made my life more difficult. I had no choice but to leave behind valuable personal property. The loss of my medical paperwork set me back in applying for disability assistance, and I have been forced to seek replacement records. Additionally, I lost my walker which allowed me to be mobile in certain situations when I am not using my wheelchair.

21. This situation has made me feel discriminated against, and it has set me back on my life path because I have been forced to start the disability benefits application process all over again.

///

1 I declare under penalty of perjury under the laws of the State of California
2 and the United States that the foregoing is true and correct. Executed on this 23rd
3 day of June, 2023, in San Bernardino, California.

*Lenka Elaine John*

Lenka Elaine John