Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000

[Additional Counsel listed on Signature Pages]

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JAMES TYSON, LENKA JOHN, and NOEL HARNER, individuals; SOCAL TRASH ARMY, an unincorporated association;

        Plaintiffs

vs.

CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,

        Defendant(s).

Case No. 5:23-cv-01539 TJH (KKx)

**DECLARATION OF BRIAN BUTTS, DATED JULY 7, 2023**

## Declaration of Brian Butts

I, Brian Butts, hereby declare:

1. I am over the age of eighteen, and I make this declaration based on my own personal knowledge, except for matters stated on information and belief, and if called to testify I could and would do so competently as follows.

2. I am an unhoused resident of the City of San Bernardino. I have been unhoused for approximately two years. Since late 2022, I have lived in or around Meadowbrook Park. I currently reside in a ravine adjacent to the park.

3. I have physical and mental impairments that substantially limit one or more major life activity. These include mobility issues, pain when bending over, and difficulty adapting to change. This affects my major life activities because it constrains how far I can walk and leaves me in constant pain.

4. On May 15, city employees told me I had to move out of Meadowbrook Park. My disabilities made it very difficult to move myself and all my belongings.

5. I requested a Reasonable Accommodation from the City of San Bernardino related to the closure of the park. Specifically, I requested permission to remain in place due to difficulty moving property, placement in non-congregate housing, and access to other homelessness services.

6. A true and correct copy of my Reasonable Accommodation request is attached as Exhibit 1. A copy of this was delivered to the City on May 15, 2023 by the ACLU of Southern California.

7. A city employee named Christian came to the park on the afternoon of May 15, and he spoke with me briefly about my Reasonable Accommodation request. He said he would look into possible hotel vouchers and would get back to me about it.

8. I never heard from Christian again. I never heard back from anyone

1

1 else at the City regarding my Request for Accommodation.

2     9. On or about May 18, I was still staying in and around Meadowbrook Park, and a city employee told me again to leave the park. He handed me a map of a vacant field next to Nunez Park and advised me to go there. He said I would be safe there for a few weeks. The map is attached as Exhibit 2. I was concerned that the field was in a remote location more than 2.5 miles from where I was staying. I also feared that I could get robbed there. I did not know if there would be any resources there or if I would be safe from harassment by the City after moving. Due to my disability, I could not transport myself or my property to Nunez Park anyway.

    10. Following the conversation with the city employee on May 18, I tried my best to comply with his order by moving out of the park. However, due to my disabilities, I was not able to move all my property in time. As a result, some of my property was discarded by the City. I lost items including my social security card, personal mementos, and other personal belongings. I informed the clean up crew that my social security card was among the items they were taking. They did not allow me to retrieve it, and told me to "write a complaint" if I was unhappy about it.

    11. The City's failure to accommodate my disabilities has made my life more difficult. I had nowhere to go after being forced to leave Meadowbrook Park, so I was forced to move into a ravine adjacent to the park. Climbing in and out of the steep, rocky ravine is difficult for me due to my limited mobility, and it exacerbates my pain and mobility disabilities.

    12. Following the closure of Meadowbrook Park, I have also witnessed how the City has made other unhoused people's lives more difficult.

    13. On one occasion in early June, I observed a city-contracted cleanup crew throwing away the personal belongings of James Tyson, an unhoused man who lives in and around Meadowbrook Park. Mr. Tyson's property was located in

the parking lot next to the park. Myself and another individual told the employees not to throw the property away because it belonged to Mr. Tyson. We said that we would move the property out of the way, and that we just needed a little time. Shortly after, the crew started taking Mr. Tyson's property and throwing it away. The property they threw away included clothing, food, hygiene supplies, and other unidentified items.

14. The City's treatment of myself and other unhoused residents has left me feeling disoriented because I do not have a safe place to go. The City is treating us like we are doing something wrong just because we do not have housing.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this seventh day of July 2023, in San Bernardino, California.

*/s/ Brian D Butts*

Brian Butts