RICHARD T. EGGER, Bar No. 162581
richard.egger@bbklaw.com
GREGG W. KETTLES, Bar No. 170640
gregg.kettles@bbklaw.com
ANDREW G. SAGHIAN, Bar No. 316680
andrew.saghian@bbklaw.com
CHRISTINA LEE, Bar No. 348276
christina.lee@bbklaw.com
BEST BEST & KRIEGER LLP
2855 E. Guasti Road
Suite 400
Ontario, California  91761
Telephone:   (909) 989-8584
Facsimile:    (909) 944-1441

Attorneys for Defendant
CITY OF SAN BERNARDINO, a municipal
entity

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA  91761

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TYSON, LENKA JOHN, and NOEL HARNER, individuals; SOCAL TRASH ARMY, an unincorporated association,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,<br><br>        Defendant(s). | Case No. 5:23-cv-01539 TJH (KKx)<br><br>**DEFENDANT CITY OF SAN BERNARDINO'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:       September18, 2023<br>Time:      10:00 a.m.<br>Dept:      9C<br>Judge:    Hon. Terry J. Hatter, Jr.<br><br><br>Trial Date:  None Set<br>Action Filed: August 2, 2023 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 3

II.   STATEMENT OF FACTS ..................................................................... 8

III.  STANDARD OF REVIEW .................................................................. 11

IV.   LEGAL ARGUMENT ......................................................................... 12

    A.   Plaintiffs have not shown they are likely to succeed on the merits of their claims................................................................. 12

        1.   Constitutional claims ............................................... 12

        2.   Discrimination under the ADA and Rehabilitation Act ........... 21

        3.   Reasonable accommodation claim ......................... 23

    B.   Plaintiffs have not shown that they will suffer an irreparable harm.............................................................................. 25

    C.   Plaintiffs have not shown that the public interest favors the preliminary injunction they seek.......................................... 26

V.    CONCLUSION .................................................................................... 27

CERTIFICATE OF COMPLIANCE.............................................................. 28

Best Best & Krieger LLP
Attorneys at Law
2855 E. Guasti Road, Suite 400
Ontario, California, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alexander v. Choate*
    469 U.S. 287 (1985) ................................................................22, 23

*American Passage Media Corp. v. Cass Communications, Inc.*
    750 F.2d 1470 (9th Cir. 1985)..................................................26

*American Trucking Associations, Inc. v. City of Los Angeles*
    559 F.3d 1046 (9th Cir. 2009)..................................................26

*Amoco Production Co. v. Gambell*
    480 U.S. 531 542 (1987) ..........................................................26

*Bedford v. Michigan*
    722 F. App'x 515 (6th Cir. 2018)............................................24

*Betts v. Brady*
    316 U.S. 455 (1942) ................................................................19

*Bingue v. Prunchak*
    512 F.3d 1169 (9th Cir. 2008)..................................................19

*Center for Food Safety v. Vilsack*
    636 F.3d 1166 (9th Cir. 2011)..................................................25

*Garcia v. City of Los Angeles*
    11 F.4th 1113 (9th Cir. 2021)...........................................*passim*

*Index Newspapers LLC v. United States Marshals Service*
    977 F.3d 817 (9th Cir. 2020)....................................................26

*Janosko v. City of Oakland*
    No. 3:23-cv-00035-WHO, 2023 WL 3029256 (N.D. Cal. April 19, 2023).......19

*Klein v. City of San Clemente*
    584 F.3d 1196 (9th Cir. 2009)..................................................12

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Lavan v. City of Los Angeles*
   693 F.3d 1022 (9th Cir. 2012)....................................................................*passim*

*Melendres v. Maricopa Cty.*
   897 F.3d 1217 (9th Cir. 2018) ............................................................................ 12

*Miralle v. City of Oakland*
   No. 18-cv-06823-HSG, 2018 WL 6199929 (N.D. Cal. November 28, 2018)...21

*Nat'l Treasury Emps. Union v. Von Raab*
   489 U.S. 656 (1989) ........................................................................................... 13

*O'Callaghan v. City of Portland*
   No. 3:21-cv-812-AC, 2019 WL 8226176 (D. Or. June 4, 2021) ....................... 20

*Rose v. Rhorer*
   No. 13-cv-03502-WHO, 2014 WL 1881623 (N.D. Cal. May 9, 2014)............. 25

*Shipp v. Schaaf*
   379 F. Supp. 3d 1033 (N.D. Cal. 2019)............................................................. 21

*Sullivan v. City of Berkeley*
   383 F. Supp. 3d 976 (N.D. Cal. 2019)......................................................... 19, 20

*Tennessee v. Lane*
   541 U.S. 509 (2004) ........................................................................................... 23

*Terry v. Ohio*
   392 U.S. 1 (1968) ............................................................................................... 12

*Texas v. Brown*
   460 U.S. 730 (1983) ........................................................................................... 13

*Thompson v. Davis*
   295 F.3d 890 (9th Cir. 2002) (per curiam), cert. denied, 538 U.S. 921, 123 S. Ct. 1570, 155 L.Ed.2d 311 (2003) ................................................................... 21, 22

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Townsend v. Quasim*
 328 F.3d 511 (9th Cir. 2003) ...........................................................................23

*United States v. Choate*
 576 F.2d 165 (9th Cir. 1978) ...........................................................................13

*United States v. Hawkins*
 249 F.3d 867 (9th Cir. 2001) ...........................................................................12

*Winter v. Natural Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ......................................................................................12, 26

*Yeager v. City of Seattle*
 No. 2:20-cv-01813-RAJ, 2020 WL 7398748 (W.D. Wash. Dec. 17, 2020) 19, 21

**State and Local Statutes**

Cal. Gov. Code § 37359 ..........................................................................................26

Cal. Gov. Code § 38775 ..........................................................................................26

City of San Bernardino Municipal Code, 12.80.130(P) ..........................................25

**Regulations**

28 C.F.R. § 35.130(b)(7) .........................................................................................23

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

# I.    INTRODUCTION

No good deed goes unpunished.  The ACLU threatened to sue the City of San Bernardino (the "City") over its homeless encampment cleanup policy more than a year ago.  To resolve the dispute, the City collaborated with the ACLU and agreed to adopt and implement a new cleanup policy with the features the ACLU demanded, including 72-hour notice, free City storage for personal property, and reasonable accommodations for those with disabilities.  The City has been implementing the new cleanup policy for nearly a year, regularly providing homeless individuals with even more protections than that ACLU-approved cleanup policy demands.  The City has also hired staff and allocated tens of millions of dollars to homeless services.  Now, Plaintiffs (who are represented by the ACLU) claim the City violated their rights at homeless encampment cleanups at two parks on May 15, 2023.  The City denies these allegations.  The City did not throw away anyone's personal property, and the City did not withhold reasonable accommodations or services from anyone who asked for them.

Homeless individuals are not the only members of our community who need services.  Too many children and families in San Bernardino live in crowded conditions and under significant socio-economic challenges.  Too many of the City's senior citizens lead lonely lives.  For some, a trip to the park may be their only opportunity for recreation and forging friendships and community.  These individuals also have a right to access safe, clean, and secure parks.  A growing body of evidence shows that "people need physical activity to maintain fitness and health."  Declaration of Lydie Gutfeld ("Gutfeld") ¶13, Exh. MM at MM-81.  "Physical activity increases strength, flexibility, and endurance; relieves symptoms of depression and anxiety; improves mood; and enhances psychological well-being."  *Id*.  "Studies have shown that when people have access to parks, they exercise more."  *Id*.

Best Best & Krieger LLP
Attorneys at Law
2855 E. Guasti Road, Suite 400
Ontario, California, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN BERNARDINO'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

1   Plaintiffs have not demonstrated they are likely to succeed on the merits.

2   Plaintiffs' Fourth Amendment theories fail because a warrant is not per se required

3   for a seizure, and the City's Cleanup Policy is reasonable.  The City's Cleanup

4   Policy does not allow summary destruction of personal property, and Plaintiffs have

5   not put forth credible evidence that the City is not following its own policy.

6   Plaintiffs have not established a likelihood of success on their Fourteenth

7   Amendment due process claim.  City staff gives written and oral notice at least 72-

8   hours before cleanings.  Courts addressing claims that more is required have

9   concluded that plaintiffs are unlikely to succeed, or as a matter of law do not

10   succeed, on the merits of a due process claim.

11   Plaintiffs have not shown they are likely to succeed on the merits of their

12   disability discrimination claim.  The City gave advance notice, and did not deny

13   more time or shelter to anyone who requested these things.  Nor have Plaintiffs

14   shown they are likely to succeed on their reasonable accommodation claim.

15   Plaintiffs make no argument why the specific forms of assistance they demand

16   (other than additional time to comply) are required for disabled individuals to have

17   meaningful access to the City's cleanup benefits.  ADA Title II does not require a

18   public entity to fundamentally alter the essential nature of its program.  To allow

19   the disabled at homeless encampments to remain indefinitely would transform a

20   park open to all into a residence for the disabled.

21   Plaintiffs have not shown irreparable harm or that the public interest favors

22   the preliminary injunction they seek.  Cities like San Bernardino have many

23   competing obligations and people clamoring for a share of limited public resources.

24   Plaintiffs have failed to demonstrate they have a right to enjoin the City from

25   balancing its many obligations and force the City to allow homeless individuals to

26   put homeless encampments in parks, wherever they please, regardless of other

27   community members' rights.  Plaintiffs' motion should be denied.

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

## II.   STATEMENT OF FACTS

Like many Southern California communities, the City is in the middle of a homelessness crisis.  Declaration of Cassandra Searcy ("Searcy") ¶13, Exh. EE at EE-2; Declaration of Edelia Eveland ("Eveland") ¶11(i), Exh. M at M-2.  More than 1,500 homeless individuals live in the City.  *Id.*  Homeless individuals have erected tents and shelters—homeless encampments—all over the City, in empty lots, on sidewalks, in alleys, and in City parks.  Eveland ¶4.  These are challenging circumstances for the homeless and the City's other residents.  *Id.* at ¶5.  City parks were once a safe space for people young and old to exercise, play games, and gather for birthday and anniversary celebrations.  *Id.*, ¶6; Declaration of Ernesto Salinas ("Salinas") ¶4. The homeless encampments turned City parks into no-go zones. Parks became littered with trash, human waste, needles, and other hazardous items. Salinas Dec. ¶4.  Open drug use, solicitation for prostitution, public nudity, and aggressive unleashed dogs scared many people away.  *Id.*; Declaration of Isabel Quintana ("Quintana Decl."), Ex. OO.  The homeless needed services.  Eveland ¶8. The City's other residents needed services too.  *Id.*

The City resolved both needs in a fiscally responsible and sustainable way. *Id.*  San Bernardino is not a wealthy community.  *Id.*; Ex. OO at OO-2.  The City declared bankruptcy in 2012, and emerged from bankruptcy less than a year ago. Declaration of Catherine Rogers, Exh. 3 [Dkt. 35-2] at p. 17, line 6; Eveland ¶8, Exh. F at F-2.  But even before that, the City managed to create and fund a position, Deputy Director of Housing and Homelessness, in May 2022.  Eveland ¶9.

Two months later the ACLU of Southern California threatened to sue the City over its homeless encampment cleanup practices, and the City agreed to a settlement.  *Id.* ¶¶12-13, Exh. O at O-1, Exh. P at P-1.  The City agreed to designate its Public Works Department ("Public Works") to take over from the Police Department the role of managing encampment cleanups.  *Id.*; Exh. P at P-2 to P-3.

55600.00637\41579085.6

- 8 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

The City also agreed to adopt a cleanup policy with the features the ACLU was demanding.  Eveland ¶13; Exh. P at P-2 to P-3, P-6 to P-9.  That policy, the "Citywide Policy on Encampment Cleanups" ("Cleanup Policy") has been implemented by Public Works ever since September 2022.  Eveland ¶13, Exh. A; Salinas ¶6.  See generally Declaration of David Lamas ("Lamas") ¶¶8-33; Declaration of David Miller ("Miller") ¶¶6-25; Salinas ¶¶6-36.

The Cleanup Policy requires the City to post notice at least 72 hours in advance that the City will clean up an encampment.  Exh. A at A-1 to A-2, A-8.  The City is required to store homeless individuals' personal property for up to 90 days free of charge upon request.  *Id*. at A-5.  Where personal property is left unattended when the City arrives at a cleanup, the Cleanup Policy requires the City to post two successive notices at least 24 hours in advance of the City storing it, and a notice that it has been stored.  *Id*. at A-3 to A-5, A-10 to A-12, A-14.  The Cleanup Policy bars the City from throwing away personal property; the City may throw away only trash.  *Id*. at A- 3 to A-4, A-16.  Reasonable accommodations shall be afforded to individuals occupying an encampment who express a need based on a disability or medical condition.  *Id*. at A-2 to A-3, A-8.  City staff may provide additional time or assistance in relocating.  *Id*.

City staff have been trained on the Cleanup Policy.  Lamas ¶8; Miller ¶¶6-7; Salinas ¶6.  Staff go above and beyond its requirements.  Staff often give notice a week or more in advance.  Miller ¶¶9, 16.  If a homeless individual asks about services, staff hands out a flyer with contact information for service providers.  Lamas ¶14, Exh. D; Miller ¶12.  On cleanup day, staff will often go to the encampment an hour or two early before cleanup time as a courtesy to remind the individuals there that the cleanup will begin soon.  Lamas ¶18; Miller ¶19.  Staff does not throw away personal property.  Lamas ¶¶20, 23-25; Miller ¶¶21-22, 24.  Staff always give individuals more time to remove their personal property when

55600.00637\41579085.6

- 9 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

asked.  Lamas ¶22; Miller ¶23.  Staff dispose only trash.  Lamas ¶20, 23; Miller ¶¶22, 24.

The City managed the May 15, 2023 cleanups at Meadowbrook Park and Perris Hill Park in compliance with the Cleanup Policy and consistent with these practices.  Staff gave oral notice weeks in advance, and posted notices one week and again 72 hours before the cleanup.  Lamas ¶¶12, Miller ¶¶14, 16-17; Exhs. B, C.  Only one individual asked to use the City's free storage service.  Lamas ¶31, Exh. E at E-1.  Only one individual asked for more time to remove their personal belongings, and City staff gave him the time he needed.  Lamas ¶¶32; Miller ¶18.  Had anyone asked for more time, City staff would have given it to them.  Lamas ¶33.  City staff did not throw away personal property; only trash was thrown away.  Lamas ¶25, Exh. E at E-2 to E-4, ¶¶29-30, 32.

The City's Deputy Director of Housing and Homelessness, Cassandra Searcy, worked on site at the homeless encampment cleanups at Perris Hill Park on May 15, 2023.  Searcy ¶5.  That same day, at approximately 1:00 p.m., Searcy received reasonable accommodation request forms that various individuals, including Plaintiff Noel Harner, had submitted to the City.  *Id*.  Before then, Ms. Searcy had not received any reasonable accommodation request, whether in writing or orally.  *Id*.  The City did not prepare these forms.  *Id*., Exh. Z.

Searcy located Harner, and she offered him case management/social services and asked him whether he would accept one of the available motel vouchers, which would provide a 7-day stay in a double occupancy room, with the motel offering light breakfast and snacks.  Searcy ¶ 7.  Searcy asked Harner, with his impaired mobility, whether he would be able to self-transfer to the motel from Perris Hill Park before the 4:30 p.m. check-in deadline.  *Id*.  Harner immediately accepted the motel voucher, stating in no uncertain terms that he would self-transfer with the assistance of a friend.  Searcy ¶7, Exh. AA.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

55600.00637\41579085.6

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

At no point during this conversation did Harner request transportation from Perris Hill Park to the motel.  Searcy ¶ 8.  In fact, Harner stated multiple times that he would self-transfer to the motel before 4:30 p.m. to accept the motel voucher the City was providing.  Searcy Decl. ¶ 8.  Had Harner requested transportation, the City would have worked toward summoning the Community Outreach and Support Team ("COAST") to help transport Harner and provide him with support.[1]  *Id*.  In total, the City was able to provide motel vouchers to over 20 people.[2]  *Id*. ¶ 9.

The City's provision of services to the homeless and cleanups of homeless encampments have improved significantly since the City settled with the ACLU a year ago, and continue to improve today.  Salinas ¶33; Miller ¶25.  In December 2022 the Mayor and City Council allocated $24.5 million towards a homelessness initiative with the following projects and services:  1) development and operation of a "navigation center," a one-stop-shop for homeless services; 2) homelessness outreach team; 3) mobile shower and laundry services; and 4) "project homekey," housing for homeless individuals.  Eveland ¶¶9, 11, Exh. N at N-7.  Since then the City has approved additional funding and applied for grants for homeless services.  Eveland ¶11, Exh. N at N-8 to N-9.

## III.   STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a *clear showing"* that (1) Plaintiffs are "likely to succeed on the merits;" (2) Plaintiffs  are "likely to suffer irreparable harm;" (3) "the balance of

---

[1] COAST is a crisis intervention team that consists of a plainclothes firefighter, a plainclothes police officer, a social worker from the San Bernardino County Department of Behavioral Health, and a support animal.  Searcy ¶8.

[2] Eve Bravo was the only disabled person who expressed difficulty in transferring to the motel site.  The City accommodated her request by summoning COAST to assist with transportation.  Unfortunately, when COAST arrived on-site, they were unable to locate or make contact with Ms. Bravo.  This, despite COAST's efforts to survey the area to try locating her.  Because Ms. Bravo was not responding to phone calls using the number provided to the City, the City was unable to provide her with the requested accommodation.  Searcy ¶9.

1   equities tips in [their] favor;" and (4) the injunction "is in the public interest."

2   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added).

3   Plaintiffs have the burden to establish each of these elements.  *Klein v. City of San*

4   *Clemente*,  584 F.3d 1196, 1201 (9th Cir. 2009). It is an abuse of discretion for the

5   trial court to enter injunctive relief that is "aimed at eliminating a condition that

6   does not violate [the alleged law] or does not flow from such a violation."

7   *Melendres v. Maricopa Cty.*, 897 F.3d 1217, 1221 (9th Cir. 2018).

8   **IV.   LEGAL ARGUMENT**

9       **A.   Plaintiffs have not shown they are likely to succeed on the merits**

10          **of their claims**

11          **1.   Constitutional claims**

12              **a.   Unreasonable seizure**

13      The Fourth Amendment protects individuals against *unreasonable* searches

14  and seizures.  U.S. Const., 4th Amend.; *Terry v. Ohio* 392 U.S. 1 (1968).  Plaintiffs

15  argue "[t]he City's confiscation and destruction of unhoused person's personal

16  property" violates the Fourth Amendment on two theories: (1) the seizure is "per se

17  unreasonable" "because there is no suggestion that the City obtained warrants,"

18  Mot. 6:15-17 (*quoting United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.

19  2001)); and (2) "even if it were necessary to 'balance the nature and quality of the

20  intrusion . . . against the importance of the governmental interests,' [*Jacobsen*, 466

21  U.S. at 125] the Ninth Circuit has repeatedly held that summarily confiscating and

22  destroying personal property of unhoused persons constitutes an unreasonable

23  seizure."  Mot. 6:15-17 (*citing Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027

24  (9th Cir. 2012) and *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir.

25  2021)).  Plaintiffs fail to show they are likely to succeed on either theory.

26             **(1)   A warrant is not required**

27      Plaintiff's first theory fails because the lack of a warrant does not make a

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

55600.00637\41579085.6

- 12 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

seizure "per se unreasonable." "The longstanding principle [is] that neither a warrant nor probable cause…is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Emps. Union v. Von Raab,* 489 U.S. 656, 665 (1989); *see also Texas v. Brown,* 460 U.S. 730, 735 (1983) ("[I]n a wide range of diverse situations we have recognized flexible, common-sense exceptions to [the warrant] requirement.")  The Ninth Circuit's reasoning in *Lavan* instructs that in the context of a Fourth Amendment challenge to the removal of unhoused persons' belongings, the proper inquiry is *not* whether a warrant was obtained but "whether the City, in seizing [unhoused persons'] property, *acted reasonably* under the Fourth Amendment." *Lavan*, 693 F.3d at 1031 (emphasis added).

### (2)    *Lavan* and *Garcia* are inapposite

The proper Fourth Amendment standard here is "reasonableness," which requires the Court to weigh the "nature and quality" of the Plaintiffs' interests against the countervailing interests of the public in safe and clean public parks. Mot. 6:15-17.  *See United States v. Choate*, 576 F.2d 165, 181-82 (9th Cir. 1978); *Lavan*, 693 F.3d at 1030.  Plaintiffs argue they will prevail under this standard based on the Ninth Circuit's holdings in *Lavan* and *Garcia.*  Mot. 6:15-17.  Not so.

To the extent *Lavan* and *Garcia* provide guidance on the reasonableness of encampment cleanups,[3] it is that the government cannot seize and destroy the personal property of unhoused persons *summarily*, i.e. without notice.  *See Lavan* at

---

[3]Neither case decided the issue presented here—whether the city's policies or conduct were reasonable.  In *Lavan*, plaintiffs challenged the city's practice of seizing and destroying unattended items left on the sidewalk; the city argued that the Fourth Amendment did not apply to items left on public rights of way. *Lavan* at 1027-30.  In *Garcia*, plaintiffs challenged a city ordinance authorizing the "immediate destr[uction]" of "bulky items"; the city argued that the entire ordinance should not be found unconstitutional because the "bulky item" provision was severable.  *Garcia* at 1119-24.  The Court disagreed with the city's positions in both cases (and found that the *Garcia* plaintiffs were likely to succeed in showing that summary destruction of bulky items violated the Fourth Amendment) but neither ruled on reasonableness.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

55600.00637\41579085.6                    - 13 -

1024; *Garcia* at 1124.  In both cases, it was undisputed that the City had a policy of summary destruction.  Here, as discussed above, it is undisputed the City has adopted a written policy—developed with, and approved by, the ACLU—that mandates a minimum of 72-hour advanced notice of cleanups and storage of any belongings left behind (which do not fall within the definition of "trash" and do not pose a health/safety hazard) for 90 days.  More specifically, as to notice, the Cleanup Policy (a) requires a written Notice of Cleanup to be posted in a "prominent place" at least 72 hours before the arrival of staff to conduct a cleanup, as well as an "oral notice" when possible; (b) the Notice of Cleanup must specify, among other things, the location, date, and time of the cleanup within a three-hour window; and (c) if the staff "misses the 3-hour window listed on a posted notice, the City must cancel the cleanup or post a new Notice of Cleanup." Ex. A at A-1 to A-2.

As to the cleanup process, the Cleanup Policy prohibits staff from disposing certain items unless the owner requests disposal, including tents, sleeping bags, medications, "items sorted in piles," backpacks, identification and "other important documents, luggage, or other containers." *Id.* at A-3.  If the owner of property is present on the day of a cleanup, staff must "[p]rovide owner ample time to remove such property from the site." *Id.*  If the owner of a property item left in the park is not present on the day of the cleanup, staff must "[t]ag" the item with a "24-Hour Notice of Intent to Store" stating that the City may seize and store the property if it is not removed within the following 24 hours; and must also post a second Notice of Cleanup "informing occupants that a further cleanup will occur in 24 hours." *Id.*, at A-3 to A-4.  As to personal property that is left unattended during a cleanup after the requisite notice is given, or when an owner requests it, the Cleanup Policy mandates that such property must be stored in a designated Public Works facility for 90 days and essential items such as medications, tents, and important documents

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

should be made available for pickup within 24 hours.  *Id.*  No fee is charged for storage.  *Id.*

City staff who oversee and/or perform encampment cleanups have received training on the Cleanup Policy.  Lamas ¶8; ¶, Miller ¶6; Salinas ¶6.  The City has been conducting cleanups in accordance with the Cleanup Policy, including by providing at least 72-hours written notice (Lamas ¶¶10-12; Miller ¶9; Salinas ¶6) and giving verbal notice advising individuals at the encampments that a cleanup is going to take place and telling them when it will happen (Lamas ¶13; Miller ¶11; Salinas ¶11).  City staff member David Miller has "become so well known among individuals at homeless encampments they will see [him] coming and occasionally initiate the conversation, asking "How long do we have, Dave?"  Miller ¶11.  On cleanup day City staff "approach each encampment at the cleanup site one by one."  Miller ¶21.  "Sometimes individuals at the homeless encampments will say they need more time to remove their personal property," and in such cases personnel "always give them more time" as the Cleanup Policy requires and the Deputy Director of Public Works instructs.  Lamas ¶22; Miller ¶23; Salinas ¶20.  City staff will help individuals identify important documents and other valuable items as the individuals sift through which items are "trash" or not, and retrieve from the "trash" pile personal identifications and other items that the individual inadvertently identified as "trash."  *See, e.g.,* Miller ¶22.

The declarations show City staff often take additional precautions to safeguard unhoused persons' rights beyond those the Cleanup Policy requires.  For example, City personnel "will often go to the encampment site one or two hours before the cleanup time as a courtesy to remind the individuals there that the cleanup will begin soon." Lamas ¶18; Miller ¶19; Salinas ¶17.  Miller declares that "[i]n practice," he "give[s] notice a week or more in advance" (Miller ¶9) and that in the case of the Meadowbrook and Perris Hills cleanups preceding the parks'

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

55600.00637\41579085.6

- 15 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

closures for maintenance and repairs, he gave notice "several weeks in advance" in addition to the 72-hour required notice.  Miller ¶16.  These City declarations are corroborated by Plaintiff Harner's declaration, stating that "[o]n or about May 8, 2023, representatives from the City of San Bernardino came and informed me and other individuals staying in Perris Hill Park that the park would be closed for fifteen days starting May 15, 2023" and "[o]n or about May 11, [Harner] saw signs posted on trees in the park by the City of San Bernardino, which stated that the park would be closing starting May 15, 2023 and [t]he signs indicated that I would need to vacate the park on May 15, 2023."  Declaration of Noel Harner [Dkt. 16] ("Harner") ¶ 5.

These policies and practices make the concerns the Ninth Circuit articulated in *Lavan* and *Garcia* inapplicable here; Plaintiffs have not shown these cases support their likelihood to succeed on the merits of their Fourth Amendment claim.

### (3)   The City's policies and practices are reasonable under the Fourth Amendment

There can be no dispute that all members of the public—including Plaintiffs and other unhoused persons—have a substantial interest in a clean and safe public parks.  The record shows that cleanups like the ones at issue here are a critical component to safeguarding that interest.  As the Deputy Director of Public Works explains, once the City's public parks were green and open spaces previously available as a safe space for all to congregate and recreate; now they have "instead become a place for public nudity and indecency, stray and dangerous pets, human feces, bodily fluids, graffiti, trash, used needles, syringes and other drug paraphernalia, assaults, fighting, and general blight."  Salinas ¶4.  He adds that the "cleanups needed to power wash biohazards, remove dead trees, repair fences, conduct mosquito testing and treatment to address concerns about West Nile virus outbreaks, conduct weed abatement, and complete extensive bathroom cleaning,

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

55600.00637\41579085.6

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

among other necessary health, safety, and maintenance/upkeep." Salinas ¶30; *see also* Eveland ¶7 (describing how ongoing occupation by homeless encampments has resulted "in a serious backlog of deferred maintenance" such as removal of dead trees, repairing and replacing electrical, lighting, irrigation and playground equipment). As the Assistant City Manager explains: "Trash, human waste, needles and other hazardous items had to be removed to make parks safer for everyone to use." Eveland ¶7.

This is unlike those situations presented in *Lavan* and *Garcia*, where the city had a policy and practice of destroying personal belongings without notice. Here, individuals receive at least 72-hours' notice before the cleanup that the items will need to be moved, and then, if they do not move them, items that are not trash or hazardous are moved into the City's storage for 90 days. Plaintiffs have not shown they are likely to prove these individual interests outweigh the interests of all members of the public in having a safe and clean public place to congregate.

For example, Plaintiff James Tyson states that "[o]n or about May 15, 2023, [he] was informed that he could no longer stay in Meadow Brook Park and that [he] had to move all [his] personal property out of the park." Declaration of James Tyson ("Tyson") ¶4. He does *not* declare the City failed to provide written or verbal notice before the cleanup nor even that the City seized or destroyed any of his personal property on May 15. Instead, Tyson alleges an incident in "early June" while he was staying "in the parking lot next to [Meadowbrook] Park" in which purportedly "nearly all [his] personal property was thrown away by a 'cleanup' crew sent by the City," including his "clothes, hygiene supplies, food, money, and other essential items." Tyson ¶11. But even as to this alleged incident, he does not say the City failed to give advanced notice. Tyson's statements are uncorroborated and inconsistent with the evidence of the City's policy and practices. Supp. Miller ¶¶8-10, Exh. QQ. The City did conduct a cleanup at the park on June 6, but found

Best Best & Krieger LLP
Attorneys at Law
2855 E. Guasti Road, Suite 400
Ontario, California 91761

only "trash & debris." *Id*. Similarly, Tyson vaguely states that "[o]ver a period of years, the City has destroyed my tents, clothing, and other personal property on multiple occasions" but provides no additional information to substantiate any constitutional violation. Tyson ¶16.

Plaintiff Lenka John states that she was also told on May 15, 2023 that she could no longer stay at Meadowbrook Park and that she would have to remove her personal property. Declaration of Lenka John [Dkt. 15] ("John") ¶4. Like Tyson, John does not allege the City failed to give notice before the cleanup nor even that the City seized or destroyed any of her personal property on May 15. John states that she requested reasonable accommodations (discussed below). But she does not claim that she did not have enough time to leave the park with her personal property that day or even say whether she left the park that day at all. Instead she claims that she was told to leave Meadowbrook Park again three days later, on May 18, 2023. John ¶11John alleges that on May 18 City employees threw her walker, first-aid kit, large suitcase, small cart, and a folder with medical papers into a trash truck. John ¶¶16, 18. These statements are uncorroborated and inconsistent with the evidence of the City's policy and practices. Supp. Miller ¶¶5-7, Exh. PP. The City did not even conduct a cleanup at the park on May 18. *Id*. Even if the Court credited this testimony, it does not evidence a widespread practice sufficient to warrant the extraordinary remedy of a preliminary injunction.

Plaintiff Harner's declaration expressly concedes the City provided notice on May 8, 2023, one week before the scheduled Perris Hill Park cleanup, and that the City subsequently posted notices on trees in the park on May 11. Harner ¶5. This is consistent with the City's Cleanup Policy of providing 72-hours' notice and the City staff declarations stating that they give more notice than the Cleanup Policy requires. Harner does not allege that any belongings were improperly seized or destroyed in the May 15, 2023 cleanup.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

55600.00637\41579085.6

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

Courts faced with constitutional challenges to encampment cleanups conducted under similar policies have denied motions for temporary restraining orders and preliminary injunctions on the ground that plaintiffs failed to show a likelihood of success on their claims. *See, e.g., Janosko v. City of Oakland*, No. 3:23-cv-00035-WHO, 2023 WL 3029256 *3 (N.D. Cal. April 19, 2023) (denying TRO and distinguishing *Lavan* and *Garcia* because there was "no summary destruction"); *Yeager v. City of Seattle*, No. 2:20-cv-01813-RAJ, 2020 WL 7398748 *5 (W.D. Wash. Dec. 17, 2020) (denying TRO where there was "hardly any evidence in the record to conclude that the City has, in fact, engaged in the type of on-the-spot destruction of property that the City of Los Angeles did [in *Lavan*]"); *see also Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976, 981 (N.D. Cal. 2019) (granting the city's motion for summary judgment on constitutionality of encampment cleanups where city "generally provides written notice at least 72 hours prior to removing a homeless encampment"). The same reasoning should preclude a preliminary injunction here.

### b.  Procedural due process

Under the Fourteenth Amendment,[4] homeless individuals are entitled to meaningful notice and an opportunity to be heard before their unabandoned property is seized and destroyed. *Lavan*, 693 F.3d at 1032. In this context, due process is satisfied where law enforcement "take[s] reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *Id.* (citation omitted). Plaintiffs contend that "[t]he City did not give the Plaintiffs or other unhoused individuals any *meaningful* chance to argue against the taking of their property, any post-seizure notice, or any opportunity to petition for

---

[4] Plaintiffs also challenge the City's conduct under the Fifth Amendment; however, that due process clause "only applies to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942).

1    their property's return." Mot. 8:12-20 (emphasis added). But Plaintiffs do not

2    explain what more the City would need to do to provide a "meaningful chance."

3    *See, e.g., O'Callaghan v. City of Portland,* No. 3:21-cv-812-AC, 2019 WL 8226176

4    at *4 (D. Or. June 4, 2021) (dismissing due process claims because plaintiff failed

5    to plead what additional process he was entitled to receive).

6         The City's policy and practice is to provide at least 72-hours of written notice

7    (which in practice, is often one week's notice), a verbal notice on the day of the

8    posting of the notice, a courtesy verbal notice several hours before the cleanup

9    begins, and an additional 24-hour notice for items left unattended at the time of the

10   cleanup. Ex. A at A-1 to A-4; Miller ¶¶9-11, 16, 19. In addition to the date and

11   time, the written notice must, and does, include instructions to the occupants

12   stating, among other things, that (1) all personal property and debris must be

13   removed by the time and date noted and that the cleanup of the site will begin at

14   that time; (2) any personal property of value left at the site after that time may be

15   stored for 90 days; (3) the address of the storage location and a phone number to

16   call to reclaim property; (5) contraband, trash, and hazardous items will be disposed

17   of. *Id.* The Policy further mandates that "[w]here possible, the noticing should be

18   coordinated with non-sworn City personnel, who should also provide oral notice to

19   any encampment occupants present during posting." *Id.* at A-2. As one district

20   court noted in granting summary judgment in favor of the city in connection with

21   similar cleanups: "The whole point of providing homeless residents with notice is

22   to give them an opportunity to remove their belongings and avoid its collection and

23   storage by the City." *Sullivan,* 383 F. Supp. 3d at 987.

24        Courts addressing circumstances where similar notice was provided have

25   concluded that plaintiffs are unlikely to succeed, or as a matter of law do not

26   succeed, on the merits of a due process claim. *See, e.g., id.* (granting summary

27   judgment for city where "[f]or all that can be gleaned from the record, the

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

encampments had sufficient notice to move yet declined to do so until they were forced out by the police. In those circumstances, members are essentially given the option of moving their items away from public property to avoid seizure or retrieving them post-seizure."); *Shipp v. Schaaf,* 379 F. Supp. 3d 1033, 1038 (N.D. Cal. 2019) (denying preliminary injunction where Standard Operating Procedures provided 72-hours' notice and a 90-day storage policy simply because "Plaintiffs and their declarants [alleged] that the City has sometimes removed and destroyed encampment members' property"); *Miralle v. City of Oakland*, No. 18-cv-06823-HSG, 2018 WL 6199929, at *3 (N.D. Cal. November 28, 2018) (no due process violation where the city's "Standard Operating Procedure provides adequate notice and opportunity for Plaintiffs to be heard before property is seized"); *Yeager*, 2020 WL 7398748 *13 (denying TRO on due process grounds where notice of cleanup was provided and the belongings were stored for pickup and would be kept for 70 days at no charge).

## 2.    Discrimination under the ADA and Rehabilitation Act

Plaintiffs claim the City discriminated against them in violation of ADA Title II and the Rehabilitation Act.  To establish a disability discrimination claim, a plaintiff must allege all four of the following elements: (1) they are "an individual with a disability;" (2) they are "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) there were "either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), cert. denied, 538 U.S. 921, 123 S. Ct. 1570, 155 L.Ed.2d 311 (2003).

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

55600.00637\41579085.6

- 21 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

Regarding the third element,[5] Plaintiffs must show they are or will be "excluded from participating in, or denied the benefits of," compliance with the City's "park closure and encampment clearing operations" because of their disabilities. *Thompson*, 295 F.3d at 895. The Rehabilitation Act only "requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287 (1985). Plaintiffs must demonstrate the City failed to provide such access when it implemented its park cleanups. Plaintiffs have not made the requisite showing under either the ADA or the Rehabilitation Act.

Plaintiffs assert they were denied the benefits of compliance with the City's directives in the Meadowbrook Park and Perris Hill Park cleanups in two ways: (1) they were impeded from complying with the City's orders because the City demands removal of property with limited notice and time and destroys property "on-the-spot;" and (2) the City's property removal directives are impracticable for disabled individuals who have more difficulty in moving their belongings without assistance. Mot. 10:18-11:1.

Plaintiffs contentions do not come close to demonstrating exclusion from compliance with the City's park clean-up operations or lack of meaningful access. Cleanup notices were given orally and posted one-week and 72 hours in advance, and oral notices were given weeks earlier. Lamas ¶12; Miller ¶¶14, 16-17. The City gives no direction of any kind for disposal of anything claimed as personal property. Lamas ¶29. No assistance of any kind was requested at Meadowbrook (aside from two people who placed some of their property in storage). Lamas ¶¶31-32. Despite Plaintiffs' use of accommodation request forms that were not City-issued and submission of such forms on the afternoon of the cleanup, all were

---

[5] The City does not concede that Plaintiffs have pleaded or have established any of the four elements.

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

55600.00637\41579085.6

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

provided accommodations including motel vouchers and more than twenty individuals were assisted at Perris Hill Park alone.  Searcy ¶¶5, 7, 9.  Plaintiff Harner stated multiple times that he would self-transfer with the assistance of a friend (Searcy ¶7), and Declarant Bravo's request for transportation assistance would have been met had she responded to the City's phone calls (Searcy ¶9).  Nor have Plaintiffs submitted any evidence that other disabled individuals are being denied the ability to comply with the City's park cleanup operations, let alone that they are being denied meaningful access based on the specific grounds Plaintiffs allege (i.e., lack of accommodations to move personal property and disposal of personal property).

### 3.    Reasonable accommodation claim

ADA Title II requires public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(7).  The ADA does not require public entities to fundamentally alter the nature of the service they provide to accommodate people with disabilities.  28 C.F.R. § 35.130(b)(7); *Tennessee v. Lane*, 541 U.S. 509, 532 (2004).  An alteration is fundamental if it would alter "the essential nature" of the program.  *See, e.g., Alexander v. Choate*, 469 U.S. 287, 300 (1985).  "[P]ublic entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003).

Plaintiffs make sweeping assertions about alleged deficiencies in the City's assistance (or lack thereof) to disabled individuals who must relocate from encampments when park cleanup operations commence.  Plaintiffs argue the City is required to provide (and is not providing) the following accommodations under the ADA:  (1) additional time and assistance with packing items; (2) storage of belongings; (3) placement in non-congregate setting; (4) permission to remain at the

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

park; (5) medically-appropriate transportation to an alternate location; (6) relocation to wheelchair-accessible location; and (7) relocation to location that permits Emotional Support Animal(s).  Mot. 13.  Plaintiffs' contentions are without support in law or fact.

Plaintiffs claim the City "ignored their requests." *Id*.  But the facts demonstrate Plaintiffs' "reasonable" individual accommodations were granted. The City's policy and practice promote assisting unhoused individuals that reside in encampments, and specifically allows for additional time for property removal and storage, if needed.  The individual Plaintiffs Tyson and Harner were provided "placement in a non-congregate setting" with motel vouchers, and transportation was obtained by the City at Declarant Bravo's request.  Plaintiff John did not ask for "placement in a non-congregate setting" such as a motel, but rather "[r]elocation to location that allows me to remain with my Emotional Support Animal(s)." Exhibit 1 to John [Dkt. 15-1], p. 6.  While not every accommodation requested by the Plaintiffs was provided, the City is not obligated to do so.  Plaintiffs cite no authority and make no argument for why the specific forms of assistance they sought, outside of additional time to comply, are *required* for disabled individuals to have meaningful access to the City's cleanup benefits, which is what they must show for the ADA to require these accommodations. *See Bedford v. Michigan*, 722 F. App'x 515, 519 (6th Cir. 2018) ("The Disabilities Act … does not require that disabled persons … necessarily be given the accommodation of their choice.").

If Plaintiffs' injunction is granted and the City forced to extend the deadline indefinitely for individuals to remove their property to perform park cleanups based on their disability as an "ADA accommodation/modification," the ADA would in effect prohibit the City from imposing a neutral deadline on the disabled and non-disabled alike simply because the deadline had a greater impact on the disabled.  To require the City to allow unhoused individuals to continue camping in the City's

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

1  parks (and prohibit the City from performing necessary cleaning and maintenance)

2  would fundamentally alter not only the City's park maintenance program.  It would

3  also transform parks, which are supposedly open to all members of the public, into

4  residences for disabled individuals.  This accommodation is not reasonable.  *Rose v.*

5  *Rhorer*, No. 13-cv-03502-WHO, 2014 WL 1881623 at *1, 5 (N.D. Cal. May 9,

6  2014) (Injunctive relief not available because plaintiffs' proposed relief would

7  fundamentally alter San Francisco's emergency adult shelter program by

8  transforming an emergency shelter into "long-term housing for a small group of

9  people with disabilities" and "are therefore not required by the ADA.")

10       Plaintiffs seek to enjoin the City from *all* "operations involving the removal

11  of unhoused people and their property from parks and other publicly accessible

12  locations throughout the City until a lawful plan is put in place" to allege the

13  procedures which Plaintiffs allege constitute "violations of law."  Mot. 22:20-24.

14  This "remedy" is outside the bounds of reason considering the individual Plaintiffs'

15  claims for alleged disability discrimination surrounding the May 15, 2023

16  Meadowbrook and Perris Hill park cleanups.  Plaintiffs offer no law or fact to

17  support a blanket prohibition on the City from performing any operation that could

18  potentially involve removal of the unhoused.  If granted, such a broad prohibition

19  would constitute a fundamental alteration of the City's Cleanup Policy and the

20  City's parks services in general.  The City's municipal code prohibits overnight

21  camping and storage of personal property in parks.  Eveland Decl. ¶ 11(i), Exhs. N-

22  119 (City's Municipal Code, 12.80.130(P)), N-187 (City's Municipal Code,

23  Chapter 12.98).

24       **B.**    **Plaintiffs have not shown that they will suffer an irreparable harm**

25       A preliminary injunction cannot be issued simply to prevent the possibility of

26  some remote future injury; a presently existing actual threat must be shown.  *Center*

27  *for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011).  Conclusory

28

55600.00637\41579085.6

- 25 -

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

1  allegations and affidavits are insufficient to show irreparable harm.  *See e.g.*

2  *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470,

3  1473 (9th Cir. 1985).  Plaintiffs must show that the harm is likely and not merely

4  speculative.  *See Winter*, 555 U.S. at 22; *see also American Trucking Associations,*

5  *Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

6       Plaintiffs have failed to sufficiently demonstrate imminent, irreparable harm.

7  Plaintiffs' evidence does not establish that the City engages in a widespread or

8  persistent pattern of destroying belongings of unsheltered individuals without

9  notice, discriminating on the basis of disability, or denying the disabled reasonable

10  accommodations.

11      **C.**    **Plaintiffs have not shown that the public interest favors the**

12          **preliminary injunction they seek**

13       "Where the Government is a party to a case in which a preliminary

14  injunction is sought, the balance of the equities and public interest factors merge."

15  *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817, 838 (9th

16  Cir. 2020).  In determining whether to issue a preliminary injunction, particularly

17  one that will affect individuals beyond the parties, a court must "pay particular

18  regard for the public consequences in employing the extraordinary remedy of

19  injunction."  *Amoco Production Co. v. Gambell*, 480 U.S. 531 542 (1987).  The

20  City has both the right and the obligation to regulate these public spaces for the

21  benefit of all users.  *See* Cal. Gov. Code § 37359 ("the legislative body having

22  control of any property owned or controlled by the city may at any time

23  withdraw…or limit the access or use in area or time or in any other reasonable

24  manner deemed necessary"); Cal. Gov. Code § 38775 ("legislative body may

25  prohibit and prevent encroachments upon or obstruction in or to any

26  sidewalk…alley… park, or other public place and provide for the removal of such

27  encroachment or obstruction").  The injunction Plaintiffs seek would have a

28

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA, 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

1   monumentally detrimental impact on all persons who wish to utilize public parks

2   for recreation and gathering places, including Plaintiffs, other unhoused residents,

3   and the rest of the community.

4   **V.    CONCLUSION**

5          For the reasons above, the City respectfully requests that the Court deny

6   Plaintiffs' Motion for Preliminary Injunction.

7   Dated:        August 28, 2023                 BEST BEST & KRIEGER LLP

8

9                                          By:  */s/ Gregg W. Kettles*

10                                              RICHARD T. EGGER
                                               GREGG W. KETTLES
11                                             ANDREW G. SAGHIAN
                                               CHRISTINA LEE
12
                                               Attorneys for Defendant
13                                             CITY OF SAN BERNARDINO, a
                                               municipal entity

BEST BEST & KRIEGER LLP
ATTORNEYS AT LAW
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CALIFORNIA 91761

5:23-CV-01539 TJH (KKX)
DEFENDANT CITY OF SAN
BERNARDINO'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for City of San Bernardino, certifies this brief contains 6,984 words, which:

_XX_ complies with the word limit of L.R. 11-6.1

_____ complies with the word limit set by court order dated_____.

Dated:        August 28, 2023              BEST BEST & KRIEGER LLP


By: _/s/ Gregg W. Kettles_
RICHARD T. EGGER
GREGG W. KETTLES
ANDREW G. SAGHIAN
CHRISTINA M. LEE

Attorneys for Defendant
CITY OF SAN BERNARDINO, a
municipal entity

55600.00637\41579085.6