# EXHIBIT A

## AGREEMENT RESOLVING DISPUTE

This Agreement Resolving Dispute ("Agreement") is entered into by and between, on the one hand, James Tyson ("Tyson"), an individual, Lenka John ("John"), an individual, Noel Harner ("Harner"), an individual, Charles Clayton ("Clayton"), an individual, Melissa Jones ("Jones"), an individual, and SoCal Trash Army, an unincorporated association, acting by and through its designated representatives, (collectively, "Plaintiffs"), and, on the other hand, the City of San Bernardino, a municipal corporation (the "City"). The parties to this Agreement are referred to herein individually as a "Party" and collectively as the "Parties." This Agreement is made with reference to the following facts:

## RECITALS

A.   WHEREAS, on August 2, 2023, Plaintiffs Tyson, John, Harner, and SoCal Trash Army filed an action, entitled *James Tyson, et al. v. City of San Bernardino*, in the United States District Court, Central District of California, Case No. 5:23-cv-01539-TJH-SHK, (the "Action"), against the City.

B.   WHEREAS, the Action alleges the City improperly seizes and destroys personal property belonging to unhoused people, and that the City does not provide reasonable accommodations to unhoused people with disabilities during the clean-up and removal of homeless encampments.

C.   WHEREAS, the Action is not filed as a class action.

D.   WHEREAS, the Action specifically alleges the following claims for relief against the City: (1) Discrimination Against Persons with Disabilities – Americans with Disabilities Act (42 U.S.C. §§ 12132, 12133); (2) Failure to Provide Reasonable Accommodations – Americans with Disabilities Act (42 U.S.C. §§ 12132, 12133); (3) Intentional Discrimination / Deliberate Indifference – Americans with Disabilities Act (42 U.S.C. §§ 12132, 12133); (4) Violation of § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); (5) Unreasonable Seizure (42 U.S.C. § 1983, Fourth Amendment and Art.1, § 13, California Constitution); (6) Violation of Due Process (42 U.S.C. § 1983, Fifth and Fourteenth Amendments and Art.1, § 7, California Constitution); and (7) Failure to Maintain Unattended Property (California Civil Code § 2080 et seq.). The City disputes each of these claims for relief in their entirety, and it further disputes Plaintiffs' underlying legal contentions and theories.

E.   WHEREAS, on August 9, 2023, Plaintiffs Tyson, John, Harner, and SoCal Trash Army, moved the Court, pursuant to Federal Rule of Civil Procedure 65(a), for a preliminary injunction order ("Preliminary Injunction Motion") enjoining the City from removing unhoused people and their property from parks and other publicly accessible locations throughout the City of San Bernardino until a lawful plan is implemented to address the unlawful practices, policies, procedures, and methods alleged in the Action.

F.   WHEREAS, on August 28, 2023, the City opposed the Preliminary Injunction Motion, denying the allegations therein.

G.   WHEREAS, on October 18, 2023, the City answered the original Complaint.

H.   WHEREAS, on November 8, 2023, Plaintiffs Tyson, John, Harner, and SoCal Trash Army, filed their First Amended Complaint, adding, among other things, allegations of encampment cleanings subsequent to the Action's filing, and updates to Plaintiffs Harner's and John's housing status.

Exhibit A, Page 3

I.    WHEREAS, on November 22, 2023, the City answered the First Amended Complaint.

J.    WHEREAS, on or about January 12, 2024, the Court granted the Preliminary Injunction Motion, and it ordered, pending the Action's final resolution or further Court-order, the City is preliminarily enjoined "from conducting any operations involving or related to the removal of unhoused people and/or their attended and/or unattended personal property from parks and other publicly accessible locations in the City" and that "the Court will consider vacating [the] Preliminary Injunction if the City crafts and presents a lawful revised Policy regarding homeless encampment clean up operations and that revised Policy is approved by the Court" (Dkt. 63, p. 16) ("Preliminary Injunction").

K.    WHEREAS, on March 7, 2024, Plaintiffs filed their First Amended Supplemental Complaint, adding, *inter alia*, Plaintiffs Clayton and Jones as parties to the Action.

L.    WHEREAS, on March 25, 2024, the City moved the Court for an order dissolving or modifying the Preliminary Injunction, which Plaintiffs opposed. The Court took the matter under submission as of April 29, 2024 and said motion remains pending with the Court.

M.    WHEREAS, on March 28, 2024, the City answered the First Supplemental Complaint.

N.    WHEREAS, pursuant to the Court's order, the Parties participated in a full-day mediation session with Denise Madigan, of Madigan ADR, on Saturday, June 15, 2024, to discuss resolution.

O.    WHEREAS, without admitting any wrongdoing, liability, or legal violations on the City's part; without conceding the validity of any of Plaintiffs' legal theories or claims; and for the sole purpose of resolving the Action and any claims relating thereto in an economic and efficient manner, the Parties now desire to enter into this Agreement on the terms set forth herein. The Parties agree this Agreement shall be inadmissible as evidence of liability or damages in any forum or proceeding, except in a proceeding to enforce this Agreement.

**TERMS**

**NOW, THEREFORE**, based upon the foregoing recitals, which are incorporated herein by this reference as though set forth in full, the terms, conditions, covenants, and agreements herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

**1.    Effective Date**

The Parties' obligations contained in this Agreement shall become effective and operative on the date the Agreement is executed by the last signatory hereto ("Effective Date").

**2.    Incorporation of Recitals**

The representations in RECITALS A to O above are hereby incorporated into and made a material part of the terms and representations of this Agreement.

**3.    Citywide Policy on Encampment Cleanups**

On the Effective Date, the Citywide Policy on Encampment Cleanups ("Finalized Policy"), a copy of which is attached hereto as ***Exhibit A*** and is incorporated into and made, by this reference, a material part of the terms and representations of this Agreement, shall be in full force and effect. The Finalized Policy shall replace all prior versions and official policies of the City of

San Bernardino relating to the cleanup of encampments, and all prior versions or drafts of the Finalized Policy will be null, void, and have no further legal effect.

**4.    Preliminary Injunction's Dissolution and Finalized Policy's Implementation**

The Parties agree to execute a Stipulation and Proposed Order of Dismissal (the "Proposed Order" discussed below in Paragraph 10), which will include moving to dissolve the Preliminary Injunction in its entirety, upon the complete satisfaction of the following terms and conditions:

a.    The City designates a coordinator pursuant to the Americans with Disabilities Act;

b.    The City obtains a supply of trash bags, envelopes, and property tags with receipts, pursuant to the Finalized Policy;

c.    The City trains its staff and its third-party contractor, Hope the Mission, regarding the Finalized Policy;

d.    The Parties coordinate efforts, as reasonably necessary, to educate unhoused residents by creating and distributing a flyer to unhoused residents regarding the Finalized Policy and discussing it with them while distributing the flyer;

e.    The City agrees to provide (i) at least fourteen days' notice to Plaintiffs' counsel before the first "Large-Scale Park Clean-up," which is defined as a clean-up impacting ten (10) or more individuals at a City Park, after the Effective Date; (ii) at least seven days' notice to Plaintiffs' counsel before the scheduled date of the next three subsequent Large-Scale Park Cleanups; and (iii) at least three days' notice to Plaintiffs' counsel before the first three clean-ups not in City Parks that involve encampments impacting five (5) or more individuals.  "City Park" is defined as an officially recognized parcel of land dedicated to the City or owned and managed by the City and used for public recreation purposes;

f.    The Parties agree on the content of the notice of any clean-ups and the manner of distribution of said notice, as set forth in the Finalized Policy; and

g.    The Parties coordinate or agree to coordinate meetings, as necessary, between Plaintiffs' counsel and (i) the City's third-party contractor, Hope the Mission, and (ii) the City's staff to implement the Finalized Policy.

The City shall provide Plaintiffs' counsel written notice of its completion of these terms and conditions.  Plaintiffs' counsel shall respond to said written notice within three (3) court days. Subject to Plaintiffs' approval regarding completion of these terms and conditions, which shall not be unreasonably withheld, the Parties shall file the aforementioned Proposed Order.  To the extent there are any disputes regarding Plaintiffs'  approval of the City's performance under this Paragraph ("Preliminary Injunction Dispute"), the Parties consent and agree to be bound by the Dispute Resolution Process defined in Paragraph 7 below.

**5.    City Maintenance, Remediation, and/or Cleaning Projects**

Except as otherwise stated in Sections 3 and 4 above, nothing herein shall be construed to prevent the City from performing routine maintenance, remediation, or cleaning projects, as the City may reasonably determine to be necessary and not in conflict with the Finalized Policy, or if the City reasonably determines that maintenance or remediation of a life threatening circumstance is necessary.

**6. Enforcement of Laws**

Nothing in this Agreement shall impact the City's right to enforce any law by issuing citations and arresting the person for an alleged violation of the law. Property seized pursuant to law enforcement shall be stored as required by law.

**7. Dispute Resolution Process**

The Parties hereby agree that any and all disputes concerning this Agreement or the Finalized Policy's implementation, including the specific conditions in Section 4 above, will be resolved via the "Dispute Resolution Process," as defined below.

This Dispute Resolution Process shall govern for a period of three (3) years from the Effective Date of this Agreement (hereinafter, the "Termination Date"), for the purposes of (a) overseeing the implementation of the Finalized Policy, and (b) implementing and presiding over the dispute-resolution process, to which the Parties hereby consent and agree:

7.1.    Except as expressly identified in this Agreement, or as may be modified by the Parties, this Dispute Resolution Process shall apply to adjudicate any and all disputes between, on the one hand, the City, and, on the other hand, Plaintiffs, including, but not limited to, any individual Plaintiff for (a) the implementation of this Agreement or the Finalized Policy, (b) disputes regarding the Parties' compliance with the Finalized Policy, and/or (c) a Preliminary Injunction Dispute (collectively, the "Disputes," and individually, a "Dispute").

7.2.    In the event of any Dispute arising before the Termination Date, the parties to that Dispute will first attempt to meet and confer informally with the other side in an effort to resolve it. In the case of a Dispute raised by one or more of the Plaintiffs through their counsel in the Action against the City or a dispute raised by the City against one or more of the Plaintiffs, this attempt will at least involve (a) a written communication from the Party initiating the Dispute to the other side's counsel describing in detail the Dispute and the requested remedy, and providing any evidence in their possession in relation thereto, (b) a written communication from the responding Party within five (5) court days either accepting the requested remedy or describing in detail the response to the Dispute and the requested remedy, if any, and providing any evidence in their possession in relation thereto, and (c) a discussion, either in person or via phone or video conference, seeking to resolve the Dispute. The phone or video conference shall occur within seven (7) court days of the submission of the writing describing the Dispute.

7.3.    If the parties to a Dispute are unable to resolve it within seven (7) court days after it is first raised by written submission by one of the parties to the Dispute, any party to the Dispute may request a hearing with Denise R. Madigan ("Mediator"), of Madigan ADR, under the standards and processes to be set by the Mediator. If Ms. Madigan is unavailable, the Parties may agree upon an alternate mediator, or, in the event the Parties cannot agree, the Parties shall use a mediator recommended by Madigan ADR. The Mediator shall communicate verbally with each party to the Dispute, and if she believes it to be helpful, the Mediator shall convene a phone or video conference with the Parties together to attempt to resolve the Dispute. If the Parties cannot reach    a    consensual    resolution    within    a    reasonable    time—where "reasonable time" is in the Mediator's discretion but in any case not to exceed fifteen (15) court days without stipulation by the parties—then the Mediator shall promptly issue a Mediator's Proposal to resolve the Dispute. The City shall pay the Mediator's fees for any Preliminary Injunction Disputes, and for the first two Disputes that are not Preliminary Injunction Disputes. If there are further Disputes, then the Mediator shall specify how her fees shall be apportioned.

7.4.    If any Party does not accept the Mediator's Proposal, then the aggrieved Party must notify the other Party or Parties and the Mediator in writing within fourteen days, and may thereafter submit the matter to the District Court for adjudication.

7.5.    If any Party does not agree to participate in the mediation process described in Paragraphs 7.3 and 7.4 above, then either Party may submit the matter to the District Court for adjudication.

**8.    Release And Covenant Not To Sue**

The following releases shall become effective upon the City's payment of the Resolution Amount, Litigation Costs, and Attorneys' Fees, as provided in Section 11.

In consideration for the terms of this Agreement, Plaintiffs, and each of them, on their own behalf, and any other individual claiming rights under this Agreement, hereby release and forever discharge the City, as well as its present and former employees, agents, managers, officers, directors, City Council members, attorneys, departments, including the Police Department, Public Works, and Parks & Recreation and divisions or affiliated entities, whether previously or hereafter affiliated in any manner (the "Released City Parties"), from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees, costs, and liabilities, of any nature whatsoever, whether or not now known, suspected, or claimed, which the Plaintiffs have at the time of signing this Agreement, as against the Released City Parties, or any of them, which arise directly or indirectly from the incidents or circumstances giving rise to or referred to in the Action.

In consideration for the terms of this Agreement, the City hereby releases and forever discharges Plaintiffs, and each of them, as well as their agents, assigns, successors, heirs, and attorneys, from and against any and all claims, demands, causes of action, obligations, damages, attorneys' fees, costs, and liabilities, of any nature whatsoever, whether or not now known, suspected, or claimed, which the City has at the time of signing this Agreement, as against the Plaintiffs, or any of them, which arise directly or indirectly from the incidents or circumstances giving rise to or referred to in the Action.

**9.    Waiver of California Civil Code Section 1542**

Contingent upon the full completion of the terms of this Agreement, it is the intention of the Parties that the release entered into as part of this Agreement shall be effective as a bar to all actions, causes of action, obligations, costs, expenses, attorneys' fees, damages, losses, claims, liabilities and demands of any character, nature and kind, known or unknown, suspected or unsuspected, to be so barred; in furtherance of which intention the Parties expressly waive any and all right and benefit conferred upon them by California Civil Code section 1542, or any similar provision of federal law, which reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties hereby acknowledge that the foregoing waiver of California Civil Code section 1542 was bargained for separately. The Parties hereto expressly agree that the release provisions herein contained shall be given full force and effect in accordance with each and all of their express

terms and provisions, including, but not limited to, those terms and provisions relating to unknown or unsuspected claims, demands and causes of action hereinabove specified. The Parties specifically agree to assume the risk of the subsequent discovery or understanding of any matter, fact or law which if now known or understood would in any respect have affected this Agreement.

**10.    Stipulated Resolution and Proposed Order of Dismissal**

Upon execution of this Agreement and the complete satisfaction of the obligations set forth in Paragraph 4, Plaintiffs shall execute a Stipulated Settlement and Proposed Order of Dismissal (the "Proposed Order") pursuant to Federal Rule of Civil Procedure 41(a)(2). A true and correct copy of the Proposed Order is attached hereto as ***Exhibit B*** and incorporated herein by this reference.

The Parties agree to the continuing jurisdiction of the Magistrate Judge of the United States District Court to which this case is assigned to adjudicate unresolved Disputes and to enforce the terms of the Agreement for a period of three (3) years after dismissal of this action. During this period, the Parties shall not be required to file a separate lawsuit to seek such enforcement.

If Plaintiffs prevail in any action necessary to enforce the terms of this Agreement, they shall be entitled to reasonable attorneys' fees and costs, in addition to any other relief to which they are entitled.

If necessary to permit the City adequate time to remedy an alleged failure to comply with the Proposed Order, the Parties may submit a joint request to extend the Court's initial period of jurisdiction.

**11.    Resolution Payments and Attorneys' Fees**

In consideration of this Agreement and the promises set forth herein, the City shall pay (1) Plaintiffs, collectively, Two Hundred Thousand Dollars and Zero Cents ($200,000.00) ("Resolution Amount"), (2) Plaintiffs' counsel Seventy Six Thousand Dollars and Zero Cents ($76,000.00) ("Litigation Costs"), and (3) Plaintiffs' counsel Three Hundred Fifty Thousand Dollars and Zero Cents ($350,000.00) ("Attorneys' Fees"). The City shall issue payment of the Resolution Amount, the Litigation Costs, and the Attorneys' Fees within thirty (30) calendar days of the dissolution of the Preliminary Injunction. Payment of the Resolution Amount and the Attorneys' Fees shall be made by check, made payable to the "American Civil Liberties Union Foundation of Southern California, Client-Trust Account," and mailed to ACLU of Southern California, c/o Esmeralda Martinez, 1313 W. 8th Street, Suite 200, Los Angeles, California 90017. Payment of the Litigation Costs shall be made by check, made payable to O'Melveny & Myers LLP, P.O. Box 894436, Los Angeles, CA 90189-4436, with reference number 3001005-00009 on the envelope or check.

In lieu of additional attorneys' fees, within two (2) years the City will reinvest Six Hundred Thousand Dollars and Zero Cents ($600,000.00) in new City Homelessness programs the Parties agree upon ("Additional Funding"). This Additional Funding shall be in addition to any funding the City had already planned or allocated to spend on homelessness programming prior to the June 15, 2024 mediation session.

The City is only responsible for the payments stated in this Agreement, and no further payment shall be required by the City to any of the Plaintiffs or their attorneys as a result of this Agreement.

**12.    Non-Admission of Liability**

By entering into this Agreement, the City does not admit any liability, and it expressly denies any liability or wrongdoing of any kind arising out of or relating to any of the claims alleged in the Action. Nothing herein constitutes an admission by the City as to any interpretation of laws, or as to the merits, validity, or accuracy of any of the claims or legal contentions made against it in the Action. The City has entered into this Agreement solely to avoid the time, expense, and risk of continued litigation. The Parties agree that an express condition of this resolution is that there has been no final determination of liability on the merits, and that this resolution and any document related to this resolution, including this Agreement, and the confidential negotiations leading up to this resolution, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, or enforce the Agreement.

**13.    Knowing and Voluntary**

This Agreement is an important legal document that has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, before signing this Agreement, (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, before signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them.

**14.    Complete Agreement**

This Agreement constitutes the entire agreement between the Plaintiffs and the City regarding the matters discussed herein and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Releasing Parties and the City relating to the subject matter hereof. The Releasing Parties and the City each acknowledge that no representations, inducements, promises, agreements, or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not set forth in the Agreement, that they have not executed this Agreement in reliance on any such representation, inducement, promise, agreement, or warranty, and that no representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding, unless executed in writing by all of the Parties to this Agreement. Any alteration, change, or modification of or to this Agreement shall be made by written instrument executed by each party hereto in order to become effective. Plaintiffs James Tyson, Noel Harner, Lenka John, Charles Clayton, and Melissa Jones expressly assign their rights to amend this Agreement to Plaintiff SoCal Trash Army.

**15.    Warranty of Authority**

Each individual or entity that executes this Agreement represents and warrants, in his, her, or its personal and official capacity, as applicable, that he, she, or it is duly authorized and empowered to enter into this Agreement on behalf of the party it purports to represent.

**16.    Counterparts**

This Agreement may be executed in multiple counterparts, each of which shall be considered an original but all of which shall constitute one agreement.

17. **Representations by Counsel and Understanding**

The Parties acknowledge that each of them has been represented in the resolution of the matter by its own counsel and represent that each of them has been fully advised of the nature of the Agreement and the possible rights and obligations released herein. The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of the Agreement. The Parties further acknowledge that each of them has carefully read the Agreement, fully understands all of the provisions of the Agreement, has had the advice of counsel regarding same (or ample opportunity to consult with counsel of their choosing), and that each of them is voluntarily entering into and signing the Agreement.

18. **No Waiver of Terms of Agreement**

The failure of one Party to insist upon another Party's compliance with any term, covenant or condition contained in the Agreement shall not be deemed a waiver of that term, covenant, or condition, nor shall any waiver or relinquishment of any Party's right or power contained in the Agreement at any one time or times be deemed a waiver or relinquishment of that Party's right or power at any other time or times.

19. **Severability**

If any portion of this Agreement is declared by a court of competent jurisdiction to be invalid, illegal, unconstitutional, or unenforceable, such portion shall be deemed severed from this Agreement and the remaining parts shall remain in full force and effect as if no invalid or unenforceable provisions had been part of this Agreement.

20. **Covenant to Take Further Actions Necessary**

The Parties hereby agree to execute such other documents and to take such other actions as may be reasonably necessary to further the purposes of this Agreement, with the Parties to bear their own costs and attorneys' fees for these additional actions.

21. **No Third-Party Beneficiaries**

The Parties agree that there are no third-party beneficiaries to this Agreement and nothing herein shall confer any enforceable rights on non-signatory persons or entities.

22. **Successors and Assigns**

Each of the terms of this Agreement is binding upon each of the Parties and its respective predecessors, assigns, executors, administrators, representatives, heirs, principals, insurers, agents, and successors-in-interest.

23. **Signatures**

I have read the foregoing Agreement, understand it, and I accept and agree to the provisions it contains and hereby execute it voluntarily with full understanding of its consequences and to be bound by its terms.

Exhibit A, Page 10

**[SIGNATURES FOLLOW ON PAGE 10]**

Dated: _August 10_, 2024

THE CITY OF SAN BERNARDINO

By: _____
ROCHELLE CLAYTON
CITY MANAGER

Dated: August 12, 2024

By: _____
JAMES TYSON

Dated: August 12, 2024

By: _____
LENKA JOHN

Dated: August 12, 2024

By: _____
NOEL HARNER

Dated: August 12, 2024

By: _____
SOCAL TRASH ARMY

Dated: August 12, 2024

By: _____
CHARLES CLAYTON

Dated: August 12, 2024

By: _____
MELISSA JONES

**[ADDITIONAL SIGNATURES FOLLOW ON PAGE 11]**

Approved as to Form:

Dated: _August 13_____, 2024              BEST BEST & KRIEGER LLP


By: _____

RICHARD T. EGGER
Attorneys for Defendant
City of San Bernardino

Dated: August 12, 2024                    O'MELVENY & MYERS LLP


By: _____

BRITTANY ROGERS
Attorneys for Plaintiffs
James Tyson
Lenka John
Noel Harner
SoCal Trash Army
Charles Clayton
Melissa Jones

# EXHIBIT A

# Citywide Policy on Encampment Cleanups

## PURPOSE AND SCOPE

The purpose of this policy is to ensure that all City personnel and contractors involved in the cleanup of encampments understand the needs and rights of unhoused individuals and to establish procedures to guide staff and contractors during all contacts with unhoused communities and their personal property, whether consensual or for enforcement purposes.

This policy shall apply to all City personnel and contractors engaged to any extent in the cleanup of encampments.

City staff shall not conduct or assist in cleanup operations of belongings that reasonably appear to be the property of unhoused persons except in accordance with this Policy.

## TREATMENT OF UNHOUSED PERSONS' PROPERTY, GENERALLY

The personal property of unhoused persons must not be treated differently than the property of other members of the public. City staff should use reasonable care when handling, collecting and retaining the personal property of unhoused persons and should not destroy or dispose of the personal property of an unhoused person except in accordance with this Policy.

City staff who encounter unattended encampments, bedding, or other personal property in public areas that reasonably appears to belong to an unhoused person should not remove or dispose of such property. If property believed to belong to an unhoused individual is the subject of a complaint or concern, city staff may inform the Deputy Director of Housing & Homelessness or designee.

## POSTING

Any cleanup of unhoused encampments must be preceded by proper posting of a Notice of Cleanup (Attachment #1), in both English and Spanish, in order to provide adequate prior notice. The Notice of Cleanup must be posted in accordance with the following rules:

- The Notice of Cleanup shall be posted at least 72 hours before the arrival of staff at an encampment for the purpose of a cleanup.

- The Notice of Cleanup must be fully completed at the time of posting, including notification of the timeframe in which the cleanup will begin and estimated to end,

recognizing that times may be extended for emergency situations. The Notice of Cleanup must state a date and time (which may be up to a 3-hour window) during which the cleanup will be initiated and anticipated to be completed. The notice must also include a map of the area to be cleaned and a contact number to request further information for outreach and related services as detailed in the policy below.

- Courtesy wakeup calls shall begin no earlier than 7:00 a.m. Cleanups shall be set between the hours of 7:30 a.m. and 6:00 p.m. only. This includes all day-of activities, including initial day-of contacts with unhoused individuals, as well as other support, storage, and reasonable accommodations discussed below.

- In the event that the City misses the 3-hour window listed on a posted notice, the City must cancel the cleanup or post a new Notice of Cleanup, in accordance with the process above.

- Posting of the Notice of Cleanup must be in a prominent place. For the locations where there is no place to affix the notice, staff conducting a cleanup must coordinate with Public Works Department staff who will erect a makeshift signpost on which to post the Notice of Cleanup.

- Staff must document the posting of the site, for example by activating body-worn camera (or other recording device) and recording video of the posting or by taking a date-stamped photograph of the posting.

- Staff shall keep a copy of the Notice of Cleanup on file at the department conducting the cleanup.

- Where possible, the noticing should be coordinated with non-sworn City personnel, who should also provide oral notice to any encampment occupants present during posting.

- Each day, following the posting of sites, staff responsible for posting the sites shall share a list of all sites posted with a Notice of Cleanup with the Deputy Director of Housing & Homelessness.

# REASONABLE DISABILITY ACCOMMODATION PROCESS

In anticipation that one or more unhoused persons at an encampment cleanup may be disabled, the City will ensure that a person—the City ADA Coordinator or their designee—who is trained and experienced in assisting those who are disabled, will be available to assist in providing reasonable accommodations when the need for such accommodation is obvious, such as a person is using mobility equipment, or where such accommodation is required by statute or regulation, or has been requested.

The ADA Coordinator or their designee shall conduct a visual assessment in advance of the cleanup in order to assess the potential ways the planned activities may impact disabled

individuals. A necessary component of this assessment shall involve identifying unhoused people with obvious needs for accommodation. The ADA Coordinator or their designee shall then create and document plans to meet these needs onsite.

An unhoused person's accommodation request may be made in writing on a form provided by the City, but individuals may make oral requests anytime, including on the day of the clean-up.

Forms will be made available to unhoused persons when notice of cleanup, storage, or disposal is posted. An unhoused person may make an oral request of any City personnel and contractors and the person will be directed to the designated person who is providing onsite accommodation services. That person's property shall not be removed or discarded pending determination of their accommodation request.

The City will comply with HIPAA regulations. The City will gather sufficient information from the person with disabilities who made the accommodation request, as well as from qualified experts, so that the City is able to determine whether the requested accommodation is reasonable, without requesting medical information beyond the individual's disability-related limitations.

If the City denies a request, it will provide a written denial explaining the interactive process undertaken, and why the request was denied, pointing to lawful reasons for denial in detail. The ADA Coordinator or their designee will engage in an interactive process with the requester to determine whether an alternative accommodation is available to meet the requester's needs. The ADA Coordinator or their designee will investigate the request, communicate effectively with the requester, and determine whether another accommodation would meet the requester's needs. A denial may be appealed immediately to the Deputy Director of Housing and Homelessness or their designee.

A reasonable accommodation may include, for example, but is not limited to, one or more of the following:
- Temporary Wheelchair Access
- Temporary Walker Access
- Hotel Vouchers
- Transportation Assistance
- Additional Time to Relocate
- Assistance with packing, storing, and/or transporting personal property
- Assistance with accessing Temporary Property Storage

# INITIATING A CLEANUP

Staff shall initiate a cleanup only during the time window posted on the Notice of Cleanup.

Upon arrival at an encampment, and before commencement of any cleanup, ample time should be provided to occupants of the encampment to retrieve personal property, to confirm which items are trash and suitable for disposal. The determination of what constitutes ample time must take individuals' disabilities into consideration. Staff should provide resources to the occupants to assist with this process. For example, staff will provide bags of different colors to differentiate between personal property and trash. Staff will also provide identification tags and

receipts for those bags filled with personal property which are to be stored in accordance with this policy.

As described above, reasonable accommodations shall be afforded to any occupants who express a need or to occupants for whom the need for accommodation is obvious as a consequence of a visible disability or medical condition. If an individual is having a medical emergency, City staff should call 9-1-1.

Prior to and during any cleanup, City staff should endeavor to proactively offer services to unhoused individuals, ideally coordinated in advance. These interactions are an opportunity to directly engage with the unhoused community and leverage the resources and services provided by other agencies in a collaborative manner that furthers public safety.

## CONDUCTING A CLEANUP

Consistent with best practices, the City shall complete the clean-up without displacing individuals, unless displacement is unavoidable for documented, objectively reasonable purposes, such as health, safety, maintenance, repair, or facilitating reserved and/or scheduled events. If unhoused individuals must move in order for the City or its contractors to carry out proper sanitation services, they shall be offered non-congregate shelter options, if available, including hotel vouchers, shelter provided by non-profit partners or other alternatives that meet the individuals' needs (e.g., disability needs and/or remaining with their partner, property, and/or pet).

During any cleanup, City staff shall treat items as follows:

- Attended Property – Attended property is personal property which remains at the site following the 72-hour notice period, where the property owner is present when City personnel arrive at a cleanup.

  - Attended property is not trash unless the owner identifies it as trash.

  - Provide owner ample time to remove or request storage of such attended property, when displacement is the only alternative.

  - Follow procedures detailed above to determine if a reasonable accommodation must be offered for assistance to relocate property.

- Trash – May be discarded. Trash is defined as discarded matter or refuse, examples may be viewed in Exhibit A.

  - For the sake of clarity, trash does not include unattended items such as identification documents, medicine, walkers, wheelchairs, medical devices, wallets or phones, medical records, and medical supplies and those items placed in personal property bags or document envelopes.

  - The City shall provide colored trash bags of different colors and document envelopes to unhoused individuals prior to each noticed clean-up. The City shall provide clear notice of which color trash bags are for trash and which are for personal property.

- Unattended Property – Unattended property means personal property left at the site following the 72-hour notice period, where the property owner is not present when City personnel arrive at a cleanup.

  o Tag property with a 24-Hour Notice of Intent to Store (Attachment #2) providing the owner with notice that the City may seize and store the property if it is not removed within the following 24 hours. The 24-Hour Notice of Intent to Store shall clearly state a date and time (with a window of no more than 3 hours) during which the City will return to finalize the cleanup. In addition, the site should be posted with a Second Notice of Cleanup (Attachment #3) informing occupants that a further cleanup will occur in 24 hours. The Second Notice of Cleanup shall be posted in accordance with the same rules as the original 72-Hour Notice of Cleanup (though it will be for a 24-hour period only).

  o Upon return, if the property is now attended, City staff shall follow the procedures for 'Initiating a Cleanup' above, i.e., providing ample time to move. If the property remains unattended, City staff should store the property in accordance with the 'Storage of Property' procedures below. Once property is taken into storage, staff shall post a Notice of Storage (Attachment #4), notifying any owner that property left at the site has been taken into storage by the City. The Notice of Storage shall be posted in a prominent place close to where the property was taken from. For the locations where there is no place to affix the notice, staff conducting a cleanup must coordinate with Public Works Department staff who will erect a makeshift signpost on which to post the Notice of Storage. The Notice of Storage shall indicate the date and time the property was taken, provide a case number, provide a phone number for more information and to arrange for the retrieval of property, state the time during which the property can be retrieved, state that no identification is needed to collect the property (except for medications), and state that the property can be retrieved free of charge. The posting of such notice shall be documented.

- Items Constituting a Health and Safety Risk That Cannot Be Safely Stored Due to Biohazard or Infestation – This covers any items that are a risk to human health and safety if left in storage. For example, this covers items soiled with human excrement or bodily fluids, or infested with insects, vermin, or vectors of disease. This shall not include items which are merely dirty or that the owner agrees to remove.

  o If trash, as defined above, the items may simply be discarded as trash. If unattended property, absent exigent circumstances presenting a potential biohazard or vermin infestation, follow procedures above.

  o Whenever an item constituting a health and safety risk is discarded, staff shall document the date, time, location, and description of the item on a Discarded Property Log (Attachment #5). A copy of the Discarded Property Log shall be sent to the Deputy Director of Housing & Homelessness.

- Contraband/Evidence of Crime – Where applicable, law enforcement personnel may process property that is contraband or evidence of a crime according to usual procedures and policies regarding disposition of evidence. Such property is outside the scope of this Policy.

- Vehicles – Vehicle towing and impoundment must be done in accordance with constitutional and statutory protections, as well as the San Bernardino Police Department "Vehicle Towing and Release" Policy.

- Documentation – Each cleanup shall be documented, to the extent possible using date-stamped and time- stamped photographs. Before and after photos shall be taken of the encampments, including items that are destroyed during the cleanup.

- Consent – Before destroying personal property (e.g., tents, tarps, clothing, bags, food, etc.) pursuant to an individual's consent, staff must first offer identification tags for personal property storage and/or any necessary reasonable accommodations to assist an unhoused individual in maintaining their personal property. If personal property, such as the items listed above, are destroyed pursuant to consent, staff shall collect a signed consent form from the individual and take a photograph of the property before it is destroyed.

## STORAGE OF PROPERTY (STORAGE CONNECT)

The City shall store all personal property which has been tagged as personal property by placing it in the designated color bag or tagged separately if a large item. This may also include unattended personal property such as identification documents, medicine, wallets or phones..

Personal property shall be stored at a City facility administered by the Public Works Department (aka Storage Connect). The facility shall primarily be reachable by phone, through which individuals may set a time to collect their property during regular business hours. Recognizing that some individuals do not have access to a cell phone, it is possible that unhoused individuals may contact City employees for a connection to Storage Connect. In such cases, City staff should refer the individual to the Housing Division of Community and Economic Development Department. Property must be available for pickup within two hours of request during business hours. Property shall be stored in a logical manner at the facility, organized based on the date on which and location from which the property was removed and marked by name when identification tags have been used. Property shall be available for collection on the same day. City staff shall expedite the return of essential items, such as medications, tents, wallets, and important documents.

At the time of pick-up, staff shall require a general description of the property, the place from which it was taken, and an approximate date on which it was taken before releasing the property. For medication, identification matching the medication must also be provided. No identification shall otherwise be required. The City shall not charge any fees in connection with the storage or release of property stored under this Policy.

In return of property, reasonable accommodations may include delivery of property back to where it was taken or within a reasonable distance.

Property shall be stored for a period of 90-days. If uncollected after 90 days, property may be

Exhibit A, Page 20

deemed abandoned and destroyed.

## POST-SEIZURE HEARING

The City expects that an unhoused person who wishes to recover their personal property that has been seized and removed by the City will arrange to collect it from Storage Connect within 90 days, and that no hearing will be necessary. The City will provide a hearing to any unhoused person who requests a hearing after the seizure of something that that unhoused person claims is their personal property. A hearing may be requested: 1) at the cleanup by orally requesting of City staff if the property has not yet been removed from the site, or 2) at other times by asking City staff or calling the number listed on the notice of cleanup, storage, or disposal. The hearing will be conducted by City's designee prior to the destruction of the thing claimed to be personal property if reasonably possible. The hearing will be documented, such as by video and audio recording.

## LAW ENFORCEMENT INVOLVEMENT IN THE ENCAMPMENT CLEANUP PROCESS

It is the City's policy to dedicate City resources in the most appropriate manner possible. Consistent with recent practices, the City seeks to allocate its law enforcement resources to exclusively public safety and policing purposes. Accordingly, the City's goal is to reduce the role of highly-qualified and specialized law enforcement personnel in encampment cleanups.

The City recognizes that homelessness is not a crime. Accordingly, City staff shall not use homelessness as a basis for detention or law enforcement action. Public Works will be the lead in clean-ups, and other departments will participate as necessary to ensure safety of individuals or to provide assistance when called upon. To the extent law enforcement personnel are present at a cleanup, law enforcement personnel shall only run warrants or check for probation or parole status only when required for ordinary law enforcement investigative purposes. The status of homelessness shall not be used as a basis to conduct warrant checks or parole status checks. Consistent with the law enforcement practices and law, law enforcement personnel shall issue a warning of possible arrest or citation under applicable statutes (e.g., Penal Code section 602 for trespassing) only when they have probable cause of a specific statutory violation and when necessary to obtain compliance with the law. In such cases, law enforcement personnel shall provide warning and a reasonable opportunity to cure the violation. If citation becomes necessary, law enforcement personnel shall document probable cause and identify the specific subsection of any code section for which the individual is being cited.

## TRAINING

City employees participating in encampment clean-ups shall be trained on how to implement this

policy, shall receive a copy of this policy, and attest annually that they have read and will follow the policy. Encampment clean-up leaders shall ensure that all employees and contractors who are participating in clean-ups are directed according to this policy.

## CLARIFICATIONS AND QUESTIONS

The City shall provide a phone number and a designated person at cleanups for unhoused individuals to ask questions, make complaints, express concerns, and make requests related to encampment cleanups. These communications shall be logged, and City staff or the City's designee shall be responsible for providing a response on site.

## DISABILITY PLANNING AND ASSESSMENTS

The City shall conduct a self-evaluation as required by law.

## ATTACHMENTS

| | |
|---|---|
| Attachment #1 | 72-Hour Notice of Cleanup |
| Attachment #2 | 24-Hour Notice of Intent to Store |
| Attachment #3 | Second Notice of Cleanup (24-Hour Notice) |
| Attachment #4 | Notice of Storage |
| Attachment #5 | Discarded Property Log |

**EXHIBIT A**

**Guidance on Determining Trash Items Versus Personal Belongings of Unsheltered Encampments**

This document provides guidance as to what items are considered disposable or personal belongings when cleaning up unsheltered encampments or similar areas. The below table provides examples of trash versus items considered personal belongings. It is meant to provide guidance with real-world examples but should not be limited to the items listed below. In all cases, if the unhoused individual identifies their property as personal belongings or as not to be discarded, then that property shall NOT be treated as trash.

Whether items are "trash" or "personal belongings" depends on context. Items located within and close to shelters should be presumed to be "personal belongings."

Examples of "trash" include:

- Syringes;
- Discarded food wrappers, litter, crumpled paper or foil;
- Spoiled food or containers with spoiled food;
- Buckets or bags with evidence of human or other waste;
- Broken bottles, other broken items with sharp edges, exposed or frayed wires;
- Open or leaking containers of fuel, oil, or gasoline.

Examples of "personal belongings"—which are not to be discarded—include:

- Bicycles, scooters, skateboards;
- Shoes, shirts, pants, jeans, undergarments, hats, unless irreparably soiled with human feces or hazardous waste or appearing with no indicia of ownership or use (i.e., a single discarded shoe);
- Photos, frames, mementos, jewelry
- Clocks or calendars;
- Diaries, books, notepads, pens, pencils;
- Electronic devices, including televisions, phones, tablets, laptops;
- Playing cards, board games;
- Dentures, dental implants;
- Identification cards, driver's licenses, Social Security cards;
- Walking aids, wheelchairs, canes, walkers, crutches;
- Eyeglasses, sunglasses;
- Blankets, sheets, sleeping bags, pillows;
- Tents, tarps;
- Suitcases, backpacks, wallets, purses;
- Trash bins, coolers, boxes, unused trash bags;
- Pots, pans, fry pans, skillets, food containers, bowls, cups, mugs;
- Pet food, beds, water/food bowls, harnesses, leashes.

**ATTACHMENT #1**

**72-HOUR NOTICE OF CLEAN-UP**

# CLEAN-UP NOTICE

You are hereby given notice of a clean-up of these premises in approximately **72 hours** after the posting of this notice.
This notice is given by the City of San Bernardino.

## Date and Time of Clean up:_____

The City will clean the area described below and pictured on the attached map.

## Instructions to Occupants:

1. Put your trash in the **GREEN trash bags** provided by the City.  Trash will be collected and discarded during the clean-up.

2. Put your loose personal belongings in **CLEAR bags** to signal they are not trash.  If you are carrying personal items in black plastic bags, you should put the whole bag in the **CLEAR** bags.  **CLEAR** bags will not be discarded.

3. [  ] You will need to move so the clean-up can take place.

4. [  ] You may remain during the clean-up.

5. Any unattended property left at this site after this clean-up may be tagged and then stored for 90 days at 205 S Pershing Ave, San Bernardino, CA 92408. To reclaim property, call (909) 384-5364.

6. Any trash, contraband (e.g. illegal drugs, weapons), or items that are hazardous or pose an immediate risk to human health and safety will be disposed.

7. If you need help because of a disability or medical condition, call (909) 384-7272, ext. 3611, or ask at the clean-up.

8. For any other questions, concerns, or complaints, contact: SBInfo@sbcity.org, (909) 384-7272, or ask at the clean-up.

Date and Time of Posting: _____

**ATTACHMENT #2**

**24-HOUR NOTICE OF INTENT TO STORE**

# NOTICE OF STORAGE
# <span style="color:red">24-HOUR NOTIFICATION</span>

You are hereby given notice to remove this unattended item on or before the time identified below. This notice is given by the City of San Bernardino.

If this item is not removed before the time and date identified below, it may be stored by the City for 90 days at 205 S. Pershing Ave., San Bernardino, CA 92408.

If property is stored, it will be available for collection by calling (909) 384-5364. Alternatively, you may ask a City employee to help you. The City will not store trash or any items that are contraband (e.g., illegal drugs, weapons), or items that are hazardous or pose an immediate risk to human health and safety. Such items will be disposed of if they remain at this location after the posted time.

If you need help because of a disability or medical condition, call (909) 384-7272, ext. 3611, or ask at the clean-up. For any other questions, concerns, or complaints, contact: SBInfo@sbcity.org, (909) 384-7272, or ask at the clean-up.

**Date and Time Posted:**

**Location:**

**Date and Time of Clean-Up:**

Exhibit A, Page 28

**ATTACHMENT #3**

**SECOND NOTICE OF CLEAN-UP**

**24-HOUR NOTIFICATION**

# SECOND NOTICE OF CLEAN-UP

You are hereby given second notice of a clean-up of these premises in approximately **<u>24 hours</u>** after the posting of this notice. This notice is given by the City of San Bernardino.

## Date and Time of Clean up:_____

The City will clean the area described below and pictured on the attached map.

## <u>Instructions to Occupants</u>:

1.  Put your trash in the **GREEN trash bags** provided by the City.  Trash will be collected and discarded during the clean-up.

2.  Put your loose personal belongings in **CLEAR bags** to signal they are not trash.  If you are carrying personal items in black plastic bags, you should put the whole bag in the **CLEAR** bags.  **CLEAR** bags will not be discarded.

3.  [  ] You will need to move so the clean-up can take place.

4.  [  ] You may remain during the clean-up.

5.  Any unattended property left at this site after this clean-up may be tagged and then stored for 90 days at 205 S Pershing Ave, San Bernardino, CA 92408. To reclaim property, call (909) 384-5364.  Alternatively, you may ask a City employee to help you.

Exhibit A, Page 30

6. Any trash, contraband (e.g. illegal drugs, weapons), or items that are hazardous or pose an immediate risk to human health and safety will be disposed.

7. If you need help because of a disability or medical condition, call (909) 384-7272, ext. 3611, or ask at the clean-up.

8. For any other questions, concerns, or complaints, contact: SBInfo@sbcity.org, (909) 384-7272, or ask at the clean-up.

**Date and Time of Posting**:

**ATTACHMENT #4**


**NOTICE OF STORAGE**

# NOTICE OF STORAGE OF PROPERTY

You are hereby given notice that the property left unattended at this site has been taken into storage by the City of San Bernardino.

This property was stored as a result of it not being removed following a 72-Hour Clean-Up Notice and the subsequent tagging of the property with a 24-Hour Notice of Storage.

The property is being stored by the City of San Bernardino at the following address: **205 S. Pershing Ave., San Bernardino, CA 92408**.

You may arrange for collection by calling: **(909) 384-5364**. Alternatively, you may ask a City employee to help you.

If you need help with collecting your belongings due to a disability or medical condition, you may ask for assistance when you call for collection.

At the time of pick-up and before the property is released, you will be expected to provide City staff with a general description of the property, the place from which it was taken for storage, and an approximate date on which it was taken for storage.

No identification will be required to collect property (except for medication).

**ATTACHMENT #5**

**DISCARDED PROPERTY LOG**

**Discarded Property Log**

* Please complete this form any time property is deemed to be a health and safety hazard, and is destroyed. Every item destroyed as a health and safety hazard should be listed.

Please photograph (with time and date stamp) the property prior to disposal. This form need not be completed for the disposal of trash (even if the trash might also constitute a health and safety hazard).

Please send a copy of this list to the Deputy Director for Housing & Homelessness at the end of each day if an item is added to the list.

| Date | Time | Location | Description of Item | Description of why determined health hazard | Attended? (Y/N) | Consent? (Y/N) |
|------|------|----------|---------------------|---------------------------------------------|-----------------|----------------|
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |
|      |      |          |                     |                                             |                 |                |

# EXHIBIT B

1  Brittany Rogers (SBN 274432)
2  brogers@omm.com
   Nancy Lynn Schroeder (SBN 280207)
3  nschroeder@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street, 18th Floor
5  Los Angeles, CA 90071
6  P: (213) 430-6000 | F: (213) 430-6407
   [Additional Counsel listed in Signature Page]
7  *Counsel for Plaintiffs*
8
   RICHARD T. EGGER, Bar No. 162581
9  richard.egger@bbklaw.com
10 GREGG W. KETTLES, Bar No. 170640
   gregg.kettles@bbklaw.com
11 ANDREW G. SAGHIAN, Bar No. 316680
12 andrew.saghian@bbklaw.com
   CHRISTINA ABBATE, Bar No. 348276
13 christina.abbate@bbklaw.com
14 BEST BEST & KRIEGER LLP
   2855 E. Guasti Road Suite 400 Ontario,
15 California 91761
16 P: (909) 989-8584 F: (909) 944-1441
   *Counsel for Defendant*
17
               **UNITED STATES DISTRICT COURT**
18
             **CENTRAL DISTRICT OF CALIFORNIA**
19

| | |
|---|---|
| 20  JAMES TYSON, LENKA JOHN, and NOEL HARNER, CHARLES CLAYTON, MELISSA JONES, individuals; SOCAL TRASH ARMY, an unincorporated association,<br><br>              Plaintiffs,<br><br>        v.<br><br>CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20,<br><br>              Defendants. | Case No. 5:23-cv-01539 TJH (SHKx)<br><br>**JOINT STIPULATION AND REQUEST FOR DISMISSAL**<br><br>Hon. Terry J. Hatter, Jr. |

1    Plaintiffs James Tyson, Lenka John, Noel Harner, and SoCal Trash Army filed

2    the above-captioned lawsuit ("Lawsuit") against the City of San Bernardino

3    ("Defendant" or "City") on August 2, 2023; Plaintiffs Charles Clayton and Melissa

4    Jones joined the Lawsuit on February 20, 2024, via the filing of the First

5    Supplemental Complaint (Dkt. 65-1) (together, the individual plaintiffs and the

6    organizational plaintiff are referred to as "Plaintiffs"; all parties are referred to as

7    "Parties"). Plaintiffs alleged that Defendant summarily seized and destroyed personal

8    property in violation of the Fourth and Fourteenth Amendments and failed to provide

9    reasonable disability accommodations in Defendant's programs, services, and

10   activities related to the removal of homeless encampments, in violation of federal

11   disability laws. Defendants denied all material allegations in the Lawsuit.

12   WHEREAS, on January 12, 2024, this Court preliminarily enjoined the City,

13   and its employees, agents and contractors, from conducting any operations involving

14   or related to the removal of unhoused people and/or their attended and/or unattended

15   personal property from parks and other publicly accessible locations in the City,

16   pending a final resolution of this case or further order of the Court. Dkt. 63 ("the

17   Preliminary Injunction"). On July 24, 2024, the Court denied the City's motion to

18   vacate or, in the alternative, to modify the Preliminary Injunction. Dkt. 109.

19   WHEREAS, on June 15, 2024, pursuant to the Court's requirements, the

20   Parties engaged in Alternate Dispute Resolution (ADR) with a private mediator.

21   Following mediation, the Court granted the Parties' Joint Stipulation to Stay All

22   Proceedings Through July 8, 2024, to allow the Parties to continue their mediation

23   discussions. Dkt. 105. The Court granted the Parties' subsequent Second and Third

24   Joint Stipulations to Extend the Stay Through August 5, 2024, and Continue the Final

25   Pretrial Conference. Dkt. 107, 110.

26   WHEREAS, the Parties subsequently reached a resolution to the disputed

27   claims in the Lawsuit. A copy of the executed Agreement Resolving Dispute

28

-1-

JOINT STIPULATION AND REQUEST FOR
DISMISSAL
5:23-CV-01539 TJH (SHKx)

1    ("Agreement") is attached hereto as Exhibit A, the terms of which are expressly

2    incorporated herein by reference, including all attachments to the Agreement.

3        WHEREAS, the Parties, through their respective counsel, respectfully request

4    and consent to have Magistrate Judge Shashi H. Kewalramani of the United States

5    District Court, Central District of California (or, in the event of his unavailability,

6    another mutually agreeable Magistrate Judge on the Central District of California's

7    Voluntary Consent List), retain jurisdiction to resolve any future disputes regarding

8    the interpretation, performance, or enforcement of the attached Agreement for a

9    period of three (3) years, and upon doing so, dismiss this action with prejudice. *See*

10   *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994); *Flanagan v. Arnaiz*,

11   143 F.3d 540, 544 (9th Cir. 1998).

12       IT IS HEREBY STIPULATED, by and between all parties to this action,

13   through their respective counsel, that they jointly request that the Court dissolve the

14   Preliminary Injunction in its entirety, and that the Lawsuit is hereby voluntarily

15   dismissed with prejudice, subject to the Court's jurisdiction as stated above regarding

16   the interpretation, performance, or enforcement of the attached Agreement for a

17   period of three (3) years.

18

19

20   Dated:  August XX, 2024          Respectfully Submitted,

21

22

23                                   O'MELVENY & MYERS, LLP

24

25                                   By:_____/s/_____

26                                   Brittany Rogers, Attorney for Plaintiffs

27

28

                                                     JOINT STIPULATION AND REQUEST FOR
                              -2-                               DISMISSAL
                                                       5:23-CV-01539 TJH (SHKx)

1

2

3

ACLU OF SOUTHERN CALIFORNIA

By:_____ /s/_____

Catherine Rogers, Attorney for Plaintiffs

4

5

6

7

8

ELDER LAW AND DISABILITY

RIGHTS CENTER

By:_____ /s/_____

Brooke Weitzman, Attorney for Plaintiffs

9

10

11

12

BEST BEST & KRIEGER LLP

13

14

15

By:_____ /s/_____

Richard T. Egger, Attorney for Defendant

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION AND REQUEST FOR
DISMISSAL
5:23-CV-01539 TJH (SHKx)

1

## **CERTIFICATE OF ATTESTATION**

2    Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filing party hereby attests that all

3    signatories listed concur in this filing's content and have authorized this filing.

4

5                                        /s/

6                                        Brittany Rogers

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-                              JOINT STIPULATION AND REQUEST FOR
                                 DISMISSAL
                                 5:23-CV-01539 TJH (SHKx)

Brittany Rogers (SBN 274432)
brogers@omm.com
Nancy Lynn Schroeder (SBN 280207)
nschroeder@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
P: (213) 430-6000 | F: (213) 430-6407
[Additional Counsel listed in Signature Page]
*Counsel for Plaintiffs*

RICHARD T. EGGER, Bar No. 162581
richard.egger@bbklaw.com
GREGG W. KETTLES, Bar No. 170640
gregg.kettles@bbklaw.com
ANDREW G. SAGHIAN, Bar No. 316680
andrew.saghian@bbklaw.com
CHRISTINA ABBATE, Bar No. 348276
christina.abbate@bbklaw.com
BEST BEST & KRIEGER LLP
2855 E. Guasti Road Suite 400 Ontario,
California 91761
P: (909) 989-8584 F: (909) 944-1441
*Counsel for Defendant*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TYSON, LENKA JOHN, and NOEL HARNER, CHARLES CLAYTON, MELISSA JONES, individuals; SOCAL TRASH ARMY, an unincorporated association, | Case No. 5:23-cv-01539 TJH (SHKx) |
| Plaintiffs, | **[PROPOSED] ORDER OF DISMISSAL** |
| v. | Hon. Terry J. Hatter, Jr. |
| CITY OF SAN BERNARDINO, a municipal entity; DOES 1-20, | |
| Defendants. | |

Having reviewed the Joint Stipulation and Request for Dismissal ("Stipulation"), pursuant to Federal Rule of Civil Procedure 41(a)(2) and good cause appearing therefore, IT IS HEREBY ORDERED:

1.  The Preliminary Injunction entered on January 12, 2024 in the above-captioned lawsuit (Dkt. 63) is hereby dissolved in its entirety.

2.  The Court expressly incorporates all the terms of the Agreement, attached hereto as Exhibit A, into this Order, including all non-monetary terms and the terms of the Exhibits attached to the Agreement which are also incorporated by reference, and hereby ORDERS the Parties to comply with all terms of the Agreement and any further orders from this Court in this matter.

3.  By entering this Order and incorporating the terms of the Agreement, as agreed to by the parties, this Court (a) approves the Parties' written consent to proceed before Magistrate Judge Shashi H. Kewalramani (or, in the event of his unavailability, another United States Magistrate Judge on the Central District of California's Voluntary Consent List that the Parties Agree to), and (b) Magistrate Judge Shashi H. Kewalramani expressly retains jurisdiction for a period of three (3) years from the date of this Order to enforce the Agreement and to resolve any future disputes regarding interpretation, performance, or enforcement of the Agreement, including and expressly, the non-monetary terms set forth in the Agreement and its Exhibits, as agreed to by the Parties as a condition of resolving their disputes. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994); *Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir. 1998).

4.  For the period of three (3) years from the date of this Order, the Parties shall comply with the Dispute Resolution procedures in the Agreement to address any disputes related to the Agreement.

[PROPOSED] ORDER OF DISMISSAL
5:23-CV-01539 TJH (SHKx)

Exhibit A, Page 43

1    5. Except as provided otherwise in the Agreement, each side shall bear their

2       own fees and costs in this Lawsuit.

3    6. This Lawsuit is hereby dismissed with prejudice.

4

5

6

7

8  IT IS SO ORDERED.

9

10  Dated:

11                                    _____

12                                    The Honorable Terry J. Hatter, Jr.

13                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER OF DISMISSAL
5:23-CV-01539 TJH (SHKx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-

[PROPOSED] ORDER OF DISMISSAL
5:23-CV-01539 TJH (SHKx)